Flenoy, Appellant, v. Ohio Adult Parole Authority et al., Appellees.

[Cite as Flenoy v. Ohio Adult Parole Auth. (1990), 56 Ohio St. 3d 131.]

(No. 89-2108—Submitted August 29, 1990—Decided December 26, 1990.)

Paul Mancino, Jr., for appellant.

Anthony J. Celebrezze, Jr., attorney general, and John J. Gideon, for appellees.

Per Curiam. In this appeal, Flenoy contends that the APA acted unlawfully in revoking his parole.[1] Finding the revocation lawful, we affirm the judgment of the court of appeals.

Flenoy claims that when the federal court granted habeas corpus relief from his murder conviction, it fatally undercut the parole revocation stemming from that conviction. He claims that the APA was then required to give him a timely parole hearing or release him. The APA and the prison superintendent[2] claim that the federal court's decision did not affect the parole revocation, because Flenoy's signature on a waiver form, admitting that he was convicted of a new crime, is sufficient basis for revocation without a hearing.

The general rule is that "parole may be revoked even though criminal charges based on the same facts are dismissed, the defendant is acquitted, or a conviction is overturned." State, ex rel. Hickman, v. Capots (1989), 45 Ohio St. 3d 324, 544 N.E. 2d 639, 640. However, if the dismissal of the criminal charges removes all factual support from the revocation, the revocation will not be upheld. Hickman, supra; Mack v. McCune (C.A. 10, 1977), 551 F. 2d 251, 254.

In re Petition for Mallory (1985), 17 Ohio St. 3d 34, 17 OBR 28, 476 N.E. 2d 1045, presented us with similar facts. In 1980, Mallory was convicted of receiving stolen property and placed on probation. In 1982, he was convicted of carrying a concealed weapon. At the subsequent probation revocation hearing, he "was found to have violated his 1980 probation by reason of the 1982 finding of guilt." Although the court of appeals later reversed the 1982 finding of guilt, the trial court did not vacate its judgment revoking probation. The court of appeals granted relief. We affirmed, holding:

"* * * [W]hen the court of appeals reversed the conviction and remanded the case, it placed appellee in the position of one not convicted. * * * The probation revocation was premised on a judgment which later became a nullity. Consequently, the order was rendered ineffective and void." Mallory, supra, at 35, 17 OBR at 29, 476 N.E. 2d at 1047.

The same result obtains when a federal court grants habeas corpus relief from a state conviction. The federal court grants such relief when it finds that a petitioner is "in custody in

---

[1] Initially we note that Flenoy is clearly not entitled to the relief he asks for — outright release. He still has to serve the remainder of his murder sentence. However, if his parole was not validly revoked, the eight and one-half months he spent in prison should be credited against his minimum sentence for murder. A court may, under Civ. R. 54, "allow the relief to which the prevailing party is entitled, regardless of what may have been requested in the complaint." Raimonde v. Van Vlerah (1975), 42 Ohio St. 2d 21, 28, 71 O.O. 2d 12, 16, 325 N.E. 2d 544, 548.

[2] Hereinafter collectively referred to as the "APA."

violation of the Constitution or laws or treaties of the United States * * *." Section 2241(c)(3), Title 28, U.S. Code. The state is then forbidden to enforce the judgment of conviction, rendering that judgment "a nullity" as effectively as a reversal by an appellate court. Thus, a federal court's grant of relief from a state conviction is as fatal to a parole revocation based solely on that conviction as a successful appeal would be.

But the APA contends that revocation here was not based solely on the conviction. It points out that Flenoy executed a form waiving a formal revocation hearing and admitting that he "* * * violated one or more of the alleged parole * * * violations * * *." The APA argues that this waiver is enough to independently support the revocation of parole.

The APA analogizes Flenoy's acknowledgement of a parole violation to a guilty plea. By entering such a plea, "the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *United States* v. *Broce* (1989), 488 U.S. 563, 570, 102 L. Ed. 2d 927, 936, 109 S. Ct. 757, 762.[3] Likewise, the APA reasons, Flenoy did not simply admit the historical fact of his conviction; rather, he stipulated that he was guilty of a parole violation.

But the APA's analogy is flawed. A plea of guilty acknowledges guilt of a particular offense. Flenoy's waiver, in contrast, was not an unambiguous admission of murder. The form specifically states: "I further understand that I have violated my parole by the *conviction* of a new felony * * *." (Emphasis added.)

When a defendant pleads guilty, in effect he stipulates that the state may punish him as if it had proved at trial that he committed the offense charged. But he does not stipulate that the state may punish him as if it had convicted him of some other offense. Similarly, Flenoy admitted that he had violated his parole "by conviction of a new felony." Thus, he stipulated that the APA could treat him as if it had proven that he had been convicted of a new felony. It does not follow that the APA could treat him as if it had proven that he killed Evans Miller, Jr. Flenoy did not "plead guilty" to that.

Thus, *State, ex rel. Nedea,* v. *Capots* (1988), 40 Ohio St. 3d 74, 531 N.E. 2d 707, is distinguishable. In *Nedea,* the APA did not rely on the parolee's criminal conviction to provide a factual basis for revocation; indeed, the parolee in *Nedea* never was convicted of anything. Here, the criminal conviction was the sole factual basis for revocation. *Mack, Mallory,* and *Hickman,* and not *Nedea,* are the relevant precedents here.

Even if the waiver form could be analogized to a guilty plea, it would be like a guilty plea that was not knowing and voluntary. A plea of guilty waives the defendant's right to a trial on guilt or innocence, and the court taking the plea must so inform him. See *State* v. *Ballard* (1981), 66 Ohio St. 2d 473, 477-479, 20 O.O. 3d 397, 399-400, 423 N.E. 2d 115, 117-119. In contrast, when Flenoy signed the waiver form, he could not have intended to waive his right to a hearing on whether he committed a parole violation, for he had no right to such a hearing at that time. Having been convicted of the murder, Flenoy had only a right to a mitigation

---

[3] Indeed, he may suffer a judgment of conviction upon a plea of guilty even while insisting that he did not commit the acts described in the indictment. See, generally, *North Carolina* v. *Alford* (1970), 400 U.S. 25.

hearing, and the waiver shows on its face that Flenoy was so informed. The APA would treat Flenoy's waiver of a mitigation hearing as a complete waiver of any hearing. We think the waiver form means what it says.

The APA next argues that Flenoy's 1989 reconviction of murder suffices to support revocation of his parole. We agree that Flenoy's reconviction made a revocation hearing unnecessary. See Ohio Adm. Code 5120:1-1-19(A)(1). But once the original revocation was voided, the APA was obliged to give him a hearing within a reasonable time. *Coleman* v. *Stobbs* (1986), 23 Ohio St. 3d 137, 23 OBR 292, 491 N.E. 2d 1126. If an unreasonably long period went by before a hearing either was granted or became unnecessary, the APA lost its right to revoke Flenoy's parole. See *United States, ex rel. Sims*, v. *Sielaff* (C.A. 7, 1977), 563 F. 2d 821, 828 (quashing parole violator warrant is only possible remedy where parole hearing has been unreasonably delayed); *Hamilton* v. *Keiter* (C.P. 1968), 16 Ohio Misc. 260, 264, 45 O.O. 2d 285, 288, 241 N.E. 2d 296, 299.

In *Coleman*, we established a two-part test in determining whether the APA's delay in holding a final revocation hearing entitled an alleged parole violator to relief. First, the court must determine whether the delay was unreasonable. "This involves the consideration and balancing of three factors: (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time." Second, the court must determine "whether the delay * * * prejudiced the alleged parole violator." *Id*. at 139, 23 OBR at 293, 491 N.E. 2d at 1128. Because the sole remedy for unreasonable delay is so drastic, a court should take "a hesitant approach" to finding a violation. *Sims, supra*, at 829.

Although *Coleman*'s two-part analysis seems to suggest that Flenoy must show both unreasonable delay and resulting prejudice, we note that, under the speedy trial analysis in which *Coleman* is rooted, a defendant may prevail even though he fails to show prejudice. *Moore* v. *Arizona* (1973), 414 U.S. 25. Speedy trial analysis depends on a balancing of four factors: length of delay, reasons for delay, assertion of rights (the three factors that *Coleman* identified as relevant to the reasonableness of delay), and the existence of prejudice. *Barker* v. *Wingo* (1972), 407 U.S. 514, 530-533. *Hanahan* v. *Luther* (C.A. 7, 1982), 693 F. 2d 629, applied this analysis to parole revocation cases, stating: "No single factor is either necessary or sufficient to a finding of a deprivation of a constitutional right." *Id*. at 634. Nonetheless, the "hesitant approach" favored by the *Sims* court includes placing "substantial emphasis" on the factor of prejudice. *Sims, supra*, at 829.

Balancing these four factors, then, we begin with the length of the delay. The court of appeals measured the delay from January 17, 1989, when the federal district court ordered Flenoy's unconditional release on the murder conviction, to March 3, 1989, when Flenoy was reconvicted. This method of calculation understates the actual delay. The delay in giving Flenoy a final hearing began when his right to a final hearing attached—that is, on June 15, 1988, when Flenoy's original murder conviction was invalidated by the federal court. Thus, the delay exceeded eight and one-half months.

Next, we consider the reason for the delay. The only reason appellees offered in the court of appeals was that "Flenoy admitted his violation of

parole and waived his right to a final hearing in April, 1982." However, we have already rejected that position.

Next, we consider whether Flenoy asserted his right to a hearing. Flenoy argues that his attorney's letters to Yvette McGee demanding Flenoy's release should be treated as requests for a hearing. The APA argued in the court of appeals that Flenoy did not effectively assert his right to a revocation hearing by insisting on his release.

It is logical to look to speedy trial cases for guidance in deciding what constitutes a request for a hearing. *Coleman* drew its three-part test for reasonableness from *Hanahan* v. *Luther, supra. Hanahan,* in turn, adapted it from "the standards suggested in *Barker* v. *Wingo*, 407 U.S. 514 * * * (1972), for determining whether a defendant's constitutional right to a speedy trial has been denied." *Hanahan, supra,* at 634.

In the analogous speedy trial context, we have held that the right to a speedy trial can be asserted by a motion to dismiss:

"Although there is nothing in the record to show that * * * [relator] has affirmatively demanded that he be brought to trial on these indictments, it is equally clear that he has not slept on his rights. * * * [R]elator has sought to have something done about these indictments, including as to part of them an action to dismiss * * *. [R]elator has taken affirmative action to dispose of these charges * * *." *State, ex rel. Lotz,* v. *Hover* (1962), 174 Ohio St. 68, 72, 21 O.O. 2d 332, 334, 186 N.E. 2d 841, 844, writ withdrawn on other grounds on rehearing (1963), 174 Ohio St. 380, 22 O.O. 2d 443, 189 N.E. 2d 433.

Although Flenoy did not ask for a hearing, he has sought to have something done about his parole revocation. Like the relator in *Lotz,* Flenoy asserted his rights by demanding his freedom.

However, it has been persuasively suggested that a request for release is entitled to less weight than a specific request for a speedy trial. "* * * [W]e believe that a motion for release, if accompanied by no other indication that the defendant desired a speedy trial, should normally be given only minimal weight as an assertion of the right. For it may very often be the case that a defendant desires immediate release from confinement, yet is not at all in a hurry to be tried." *Graves* v. *United States* (D.C. App. 1984), 490 A. 2d 1086, 1099. We think this reasoning is equally persuasive in parole revocation cases.

Moreover, the *Lotz* court took care to note that the relator in that case was not represented by counsel. That suggests that where a relator is represented by counsel, as Flenoy was here, his request for release is entitled to even less weight as an assertion of rights.

Flenoy's delay in asserting his rights also weighs against him. *Coleman* speaks of assertion "within a reasonable period of time." Although the federal court granted habeas corpus relief on June 15, 1988, Flenoy did not assert his rights in any way until his attorney's September 13 conversation with McGee.

We have held that "the nature and duration of the penalty imposed for the new crime which forms the basis for a parole revocation" should be considered. *State, ex rel. Jackson,* v. *Denton* (1983), 5 Ohio St. 3d 179, 180, 5 OBR 397, 398, 449 N.E. 2d 1288, 1289. This factor weighs heavily against Flenoy, as he was convicted of one of the worst crimes specified in the Revised Code—murder—and sentenced to fifteen years to life imprisonment.

The next step in a *Coleman*

analysis is to determine whether the alleged parole violator was prejudiced by the delay. "The court must weigh any prejudice to the alleged parole violator in light of the interests protected by the 'reasonable time' requirement of R.C. 2967.15 and Ohio Adm. Code 5120:1-1-19(A)." *Coleman, supra,* at 139, 23 OBR at 293, 491 N.E. 2d at 1128. Those interests include: "(1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing." *Id.* Of the three, "primary attention is frequently focused, where absolute release with dismissal of charges is the only available remedy, on defense impairment, the 'most serious' component of prejudice." *Sims, supra,* at 829.

Flenoy was subjected to oppressive incarceration. He was imprisoned for eight and one-half months without a hearing. This imprisonment cannot be attributed to his then upcoming retrial for murder, since the record shows that he posted bond on that charge. .

The second consideration, the accused's "anxiety and concern," has minimal weight. During the period in question, Flenoy was facing retrial for murder. His anxiety over his upcoming trial must have overshadowed any anxiety he may have suffered over the status of his parole.

Defense impairment, the consideration on which we focus our "primary attention," *Sims, supra,* does not apply. We find it wholly unlikely that Flenoy would have been better able to defend against the revocation of his parole had the hearing been held earlier.

Evans Miller, Jr. was murdered in 1981. Flenoy became entitled to a hearing on June 15, 1988, and was convicted eight and one-half months later, on March 3, 1989. We doubt that witnesses who still remembered the events of 1981 well enough to be useful to Flenoy on June 15, 1988, would have been substantially less useful to him in early 1989.

Although Mancino's October 14, 1988 letter to McGee stated that Flenoy's imprisonment was "preventing adequate preparations for a retrial * * *," Flenoy alleged no such prejudice in his complaint, nor did he offer proof of this assertion in the court of appeals. ,

Although Flenoy was subjected to oppressive pretrial incarceration, there is no evidence that it impaired his defense. Moreover, his tardy assertion of rights is entitled to little weight, since his lawyer requested his release instead of a speedy hearing. On balance, we conclude that the APA did not forfeit its right to revoke Flenoy's parole. Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.