**ROBERSON**

v.

**MOHR.**

[Cite as *Roberson v. Mohr* (1991) 73 Ohio App.3d 262.]

Court of Appeals of Ohio,
Ross County.

No. 1634.

Decided April 23, 1991.

*Steve Roberson, pro se.*

*Lee I. Fisher,* Attorney General, and *Alexander G. Thomas,* for respondent.

STEPHENSON, Presiding Judge.

This is an original action filed on October 26, 1989 by Steve Roberson, petitioner herein, seeking the issuance of a writ of habeas corpus pursuant to R.C. 2725.01 *et seq.*[1] Petitioner is currently incarcerated in the Ross Correctional Institute located in Chillicothe, Ohio. Petitioner asserts that the Adult Parole Authority (hereinafter referred to as "A.P.A.") failed to grant him a timely final parole revocation hearing and contends that he is, therefore, entitled to discharge.

The following facts are pertinent to this case. Petitioner was arrested on February 8, 1989 and charged with forgery, in violation of R.C. 2913.31, and obstructing justice, in violation of R.C. 2921.32. Both crimes were felonies of the fourth degree.[2] At the time of the commission of the crimes, petitioner was a parolee, and, on February 13, 1989, a parole detainer was placed on him as a result of the arrest. Apparently, petitioner waived his right to his initial parole revocation or probable cause hearing.

---

1. R.C. 2725.01 reads as follows:
   "Whoever is unlawfully restrained of his liberty, or entitled to the custody of another, of which custody such person is unlawfully deprived, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment, restraint, or deprivation."

2. Obstructing justice can also be a misdemeanor. See R.C. 2921.32(B).

On April 14, 1989, petitioner was convicted of both crimes by the Hamilton County Court of Common Pleas and was sentenced to concurrent one-year terms. On May 17, 1989, petitioner was transferred to the Ross County Correctional Institute. Petitioner received time off for good behavior, and his sentences for forgery and obstructing justice expired on October 7, 1989. A final parole revocation hearing was held on October 23, 1989.

On October 26, 1989, petitioner filed a complaint in this court wherein he set forth the above facts. He is seeking the issuance of a writ of habeas corpus, claiming that he is being unlawfully detained because the A.P.A. failed to timely hold his final parole revocation hearing. On December 20, 1989, Gary Mohr, the Superintendent of the Ross County Correctional Institute and respondent herein, by and through the Attorney General of Ohio, filed a motion for summary judgment. Petitioner responded with a motion to strike or in the alternative for summary judgment.

In ruling upon a motion for summary judgment, a court is limited to considering "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action * * *." Civ.R. 56(C). In the case at bar, there is no material which this court may consider other than the pleadings.[3] Before summary judgment may be granted, "it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

With that standard in mind, we now address the issues in the case *sub judice.* The Ohio Supreme Court in *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126, in the syllabus, set forth the following standard to use when considering whether a detained parolee is entitled to habeas corpus relief because of a delay by the A.P.A. in giving the parolee a timely final parole revocation hearing:

"A court should apply a two-part test in determining whether the delay of the Adult Parole Authority, in not commencing a final parole revocation

---

**3.** There are various other documents filed by the parties; however, none of the documents is in a form which may be considered under Civ.R. 56. We note that since neither party objected to the form of the improper documents, we could, in our discretion, consider them. See, *e.g., Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 83, 523 N.E.2d 902, 907–908. Nonetheless, we decline to do so in this particular case.

hearing, entitles an alleged parole violator to habeas corpus relief. First, it must be determined that any delay was unreasonable. Second, if the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator."

Although *Coleman* would appear to require petitioner to show that the delay was both unreasonable and prejudicial, the Ohio Supreme Court recently clarified *Coleman* in *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 564 N.E.2d 1060. The court stated the following at 134, 564 N.E.2d at 1063–1064:

"[W]e note that, under the speedy trial analysis in which *Coleman* is rooted, a defendant may prevail even though he fails to show prejudice. *Moore v. Arizona* (1973), 414 U.S. 25 [94 S.Ct. 188, 38 L.Ed.2d 183]. Speedy trial analysis depends on a balancing of four factors: length of delay, reasons for delay, assertion of rights (the three factors that *Coleman* identified as relevant to the reasonableness of delay), and the existence of prejudice. *Barker v. Wingo* (1972), 407 U.S. 514, 530–533 [92 S.Ct. 2182, 2191–2193, 33 L.Ed.2d 101, 116–119]. *Hanahan v. Luther* (C.A.7, 1982), 693 F.2d 629, applied this analysis to parole revocation cases, stating: 'No single factor is either necessary or sufficient to a finding of a deprivation of a constitutional right.' *Id.* at 634. Nonetheless, the 'hesitant approach' favored by the *Sims* court includes placing 'substantial emphasis' on the factor of prejudice. [*United States ex rel. Sims v. Sielaff* (C.A.7, 1977), 563 F.2d 821, 829]."

Accordingly, there are basically two factors we must take into consideration, to wit: (1) whether the delay was unreasonable, and (2) whether petitioner was prejudiced by the delay. While the factor of prejudice is the more important factor, the lack of prejudice is not alone determinative. We must weigh both factors in deciding whether petitioner is entitled to habeas corpus relief.

With this in mind, we first address whether the delay was unreasonable. Ohio law sets forth a parole violator's right to be released where there is an unreasonable delay in R.C. 2967.15, in pertinent part: "In the event the authority fails to make a determination of the case of the parolee alleged to be a violator of the conditions of his * * * parole within a reasonable time such parolee shall be released from custody under the same terms and conditions of his original * * * parole." However, there is nothing in R.C. 2967.15 which defines the term "reasonable time." Nor is there any guidance in the Ohio Administrative Code wherein rules and regulations concerning parolees are set forth in Ohio Adm.Code 5120:1-1-01 *et seq.* Ohio Adm.Code 5120:1-1-19 sets forth the procedure for the revocation hearing and states that such hearing should be held "[w]ithin a reasonable period of time." Ohio Adm.

Code 5120:1-1-19(A). Again, however, there is nothing to indicate what constitutes a reasonable period of time. The court in *Coleman*, therefore, looked for guidance from *Hanahan, supra*, 693 F.2d at 634, and determined that there are three factors to consider when determining whether a delay is unreasonable, to wit: "(1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time." *Coleman, supra*, 23 Ohio St.3d at 139, 23 OBR at 293, 491 N.E.2d at 1128.

In the case *sub judice*, petitioner's final parole revocation hearing was held October 23, 1989, two hundred fifty-seven days after his arrest on February 8, 1989. We note, however, that the delay from the date of petitioner's arrest until April 14, 1989 was clearly not unreasonable, since petitioner was in the process of being tried for the crimes of forgery and obstructing justice. Nevertheless, after April 14, 1989, and certainly after May 17, 1989 when petitioner was transferred to the Ross Correctional Institute, the A.P.A. could have held a revocation hearing at any time. From May 17, 1989, until October 23, 1989, one hundred fifty-nine days or in excess of five months elapsed. In *Hanahan, supra*, the court stated that while a four-month delay is not *per se* unreasonable, it does raise a due process question. Likewise, a five-month delay raises the same question.

In addition to the length of the delay, we must also consider the reasons for the delay and whether petitioner asserted his right to a hearing. There is no indication that the A.P.A. had any reason for the delay. There was no reason in the record as to why a hearing could not have been held anytime after petitioner's conviction. Finally, there is no evidence that petitioner ever asserted his right to a final parole revocation hearing. While petitioner's silence did not indicate a waiver to his right to a speedy hearing, *see Barker, supra*, 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–116, the fact that petitioner "made no demand for a prompt hearing * * * makes it 'difficult for [petitioner] to prove that he was denied a speedy [hearing].' " *Hanahan, supra*, 693 F.2d at 635 (citing *Barker, supra*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 117–118).

Given the circumstances in the case at bar, it is a close question as whether petitioner was denied a hearing within a reasonable time. This is particularly true given the additional fact that until October 7, 1989, appellant was not incarcerated as a result of the parole detainer but instead because he was serving a sentence for a separate conviction. During the period prior to October 7, 1989, appellant clearly was not entitled to a writ of habeas corpus. See R.C. 2725.05; *Coleman, supra*, 23 Ohio St.3d at 139, 23 OBR at 293, 491 N.E.2d at 1128. Hence, the period prior to petitioner's final parole revocation

hearing wherein he was incarcerated solely as a result of the parole detainer consisted of only sixteen days.

Next, we must determine whether the delay was prejudicial to petitioner. The court in *Coleman* set forth three interests to consider when determining whether an unreasonable delay was prejudicial to a detained parolee, to wit: "(1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator, and (3) limitation of the possibility that delay will impair the accused parole violator's defense at his final parole revocation hearing." See, also, *Hanahan, supra,* 693 F.2d at 635.

■ It is clear that there was no oppressive prehearing incarceration in the case at bar. As noted, *supra,* all but the final sixteen days petitioner spent incarcerated prior to his final parole revocation hearing were a result of his crimes of forgery and obstructing justice, not merely the parole detainer. Hence, whether or not petitioner was a parolee, he would have spent that time in prison. Accordingly, if in fact two hundred fifty-seven days' incarceration could be considered oppressive, it was not caused by the failure to afford petitioner a timely final parole revocation hearing.

■ The second factor to consider is the level of anxiety caused by the delay. That factor, along with the other two, were first adopted for use in speedy trial cases. See *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 117–118. The *Hanahan* court incorporated them for situations such as the case at bar involving parole revocation hearings. In doing so, the court noted that in cases involving convicted felons on parole, the "level of anxiety cannot be said to be as high as that of an unconvicted defendant." In the case at bar, we conclude that petitioner's anxiety level was not particularly significant. He asserts that he had an expectation of being released on October 7, 1989 because, since he had been on parole, he had been arrested on several occasions and had never had a final parole revocation hearing, *i.e.,* he had always been released under the conditions of his original parole. Under such circumstances, petitioner certainly would have had no anxiety concerning his final parole revocation hearing until after October 7, 1989 when he was not released. Thus, any anxiety would have existed only for a two-week and two-day period. That cannot be considered an excessive amount of anxiety.

■ We finally consider the third factor, *i.e.,* the probability that petitioner's defense was impaired as a result of the delay. Ohio Adm.Code 5120:1-1-19(A)(1) states the following:

"In the event a releasee is convicted and sentenced on a new felony under Ohio law, *it shall be conclusively presumed that Administrative Regulation 5120:1-1-12 has been violated.* In such cases, as applicable, the parole

revocation hearing will be confined to the determination of mitigating circumstances." (Emphasis added.)

Ohio Adm.Code 5120:1–1–12 concerns the conditions for release of a person⁰ on parole. Thus, since petitioner was convicted of two felonies, it is conclusively presumed that he violated the conditions of his parole. Therefore, petitioner had no defense to be impaired; at the hearing, he could only present mitigating factors. We, therefore, conclude from the foregoing that petitioner was not prejudiced by the delay in holding his final parole revocation hearing.

▮ After considering the undisputed facts before us, construed most strongly in favor of petitioner, and determining that there was no prejudice to petitioner and that it was even questionable whether the delay was unreasonable, we hold as a matter of law that petitioner is not entitled to a writ of habeas corpus. We, therefore, grant respondent's motion for summary judgment and dismiss petitioner's action.

*Motion granted*
*and petition dismissed.*

HARSHA, J., concurs.

GREY,, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent because I believe the majority opinion is mixing apples and oranges here.

Roberson was sent to the Ross Correctional Institute on May 7, 1989, but was not given a hearing until October 23, 1989, one hundred fifty-nine days later. Since he was there and readily available this delay seems prima facie unreasonable.

The majority opinion rationalizes this away by saying that, since he was serving his sentence for the offense committed while on parole, he was not entitled to habeas corpus, and thus not entitled to a parole revocation hearing. Since Roberson did not complete his sentence until October 7, 1989, the majority holds that the delay was only sixteen days.

This analysis fails to take into account the mandates of R.C. 2929.41 and the policies of the A.P.A. which require that when a parolee is convicted and returned to prison he serves the second sentence first, then starts serving time on the original sentence. This is what happened to Roberson, who finished the second sentence on October 7, 1989, and then reverted to doing

time on his original sentence. This is what happens to all prisoners and none of them would be entitled to habeas corpus during that period.

They are, however, entitled to a revocation hearing even if they are not entitled to be released. That hearing must be conducted within a reasonable time. Perhaps the problem with the majority's reasoning can best be seen if, for the sake of example, we change the facts slightly and add a year to figures involved here. Suppose Roberson had been transferred to the Ross County Correctional Institute with a heavier sentence and would not have completed it until October 7, 1990, and was given a revocation hearing on October 23, 1990. The time for providing a revocation hearing would be one year and one hundred fifty-nine days in our example. Under the majority analysis, however, the delay would still only be sixteen days. Implicit in the majority holding is that *no prisoner* who is returned to prison for an offense committed on parole is entitled to a revocation hearing until he has served the full sentence for that second offense, *i.e.*, until he is eligible for habeas relief.

This problem was foreseen by Justice Wright in his concurring opinion in *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126. *Coleman* is quite distinguishable from the facts in this case because it dealt with pre-trial incarceration. The Supreme Court held that it was not unreasonable to delay the revocation hearing until Coleman had been tried on the current charge. It also held that since Coleman was charged in a court that had jurisdiction, habeas corpus was not the proper remedy. Justice Wright pointed out that if habeas was not the proper remedy, then, "[u]nder these circumstances a writ of mandamus is appellee's only remedy to compel the authority to hold a parole revocation hearing." *Id.* at 140, 23 OBR at 294, 491 N.E.2d at 1129.

In this case, Roberson was convicted and returned to the custody of the A.P.A. As such, he had the right to a hearing within a reasonable time even though he was not entitled to immediate release on habeas. The majority holding in this case expands the holding in *Coleman v. Stobbs* to an extent not intended, in my opinion, by the Supreme Court. If Roberson is not entitled to habeas relief here, then he might be entitled to mandamus as suggested by Justice Wright, but this apparently was not accepted by the other members on the court. If he is not entitled to mandamus, then he has a right to a hearing but no way to enforce that right, which is a jurisprudential nullity. Hohfeld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning (1913), 23 Yale L.J. 16. The circuity predicted by Justice Wright has come home to roost.

I would resolve this case strictly according to ordinary summary judgment principles. Roberson is entitled to a hearing within a reasonable time. If

there is no reason for the delay, he is entitled to discharge. As noted in the majority opinion, "There is no indication that the A.P.A. had any reason for the delay." If the A.P.A. had no reason, then it is by definition an unreasonable delay. I would grant Roberson's motion for summary judgment and order him discharged.

Thus, I dissent.