[Cite as *State ex rel. Glover v. May*, 2020-Ohio-3353.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE ex rel. EZELL GLOVER | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Petitioner | Hon. John W. Wise, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2020 CA 0028 |
| HAROLD MAY, WARDEN | |
| | |
| Respondent | O P I N I O N |


CHARACTER OF PROCEEDING:     Petition for Writ of  Habeas Corpus


JUDGMENT:                                Dismissed


DATE OF JUDGMENT ENTRY:       June 17, 2020


APPEARANCES:

For Petitioner                                      For Respondent

CATHERINE H. BREAULT              DAVID YOST
RION, RION & RION, LPA, INC        OHIO ATTORNEY GENERAL
130 West Second Street                 JERRI L. FOSNAUGHT
Suite 2150                                      ASSISTANT ATTORNEY GENERAL
P. O. Box 10126                             150 East Gay Street, 16th Floor
Dayton, Ohio  45402                       Columbus, Ohio  43215

*Wise, John, J.*

**{¶1}** On March 2, 2020, Petitioner, Ezell Glover, filed a Petition for Writ of Habeas Corpus against Respondent, Harold May, Warden of the Richland Correctional Institution.[1] Mr. Glover seeks habeas relief on two grounds. He first claims the Ohio Adult Parole Authority ("OAPA") failed to act within a reasonable period of time to declare him a parole violator. Second, Mr. Glover maintains he was improperly denied credit for time served while incarcerated in Georgia. We find Mr. Glover is not entitled to habeas relief on either ground.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**{¶2}** We present the facts as set forth in Mr. Glover's petition. Mr. Glover was convicted of robbery, grand theft auto, and theft in 1983 and was subsequently released from the custody of the Ohio Department of Rehabilitation and Correction and placed on parole. (Petition at ¶ 8) Mr. Glover alleges the exact conditions of his parole are unknown because the Ohio Department of Rehabilitation and Correction is unable to locate many of the records associated with his release. (*Id.* at ¶ 10)

**{¶3}** Subsequently, Mr. Glover was convicted of offenses in Georgia in 1994 and 1996 and served time in the Georgia Department of Corrections from July 17, 1995 to February 5, 1997 and January 26, 1998 to February 3, 2004. (*Id.* at ¶ 11) Neither at the time of Mr. Glover's release in 1997 nor the time of his release in 2004 did the OAPA revoke Mr. Glover's parole or obtain custody of him. (*Id.*)

---

[1] Mr. Glover seeks the same relief here that he sought in a previously filed writ that we dismissed for failure to comply with R.C. 2725.04(D). *See Glover v. May*, 5th Dist. Richland No. 2020 CA 0017, 2020-Ohio-557.

**{¶4}** On March 1, 2005, Mr. Glover returned to the custody of the Georgia Department of Corrections and remained incarcerated until March 7, 2019. (*Id.* at ¶ 12) During this period of incarceration in Georgia, on November 27, 2006, the Ohio Department of Rehabilitation and Correction issued a detainer for Mr. Glover to be returned to Ohio upon his release from prison in Georgia. (*Id.*) The attorney general, on behalf of Mr. May, alleges the OAPA placed a detainer on Mr. Glover on April 6, 1995. (MSJ at p. 3; Exhibit B-14) However, this document specifically states, "This letter is NOT to be taken as a detainer." (*See* MSJ at Exhibit B-14.)

**{¶5}** On November 21, 2006, the OAPA issued a State Warrant specifically requesting the arrest, detention, and hold of Mr. Glover. A subsequent letter dated November 27, 2006, from the Georgia Department of Corrections to the Ohio Department of Correction and Rehabilitation confirms they received a detainer for Mr. Glover. This letter states:

> Your detainer is acknowledged and has been filed against the above named inmate. By copy of this notification the Warden/Superintendent, having physical custody of the inmate, will be instructed to inform the inmate of the source and content of your detainer.
>
> Our files are marked to show that you are to be advised approximately thirty (30) days in advance of this inmate's release date so that you may arrange to take custody of him. * * *

(MSJ at Exhibit B-15) Further, a Violation Report dated March 29, 2019, attached as an exhibit to Mr. Glover's memorandum in opposition to Mr. May's summary judgment motion

indicates, "* * * as of 11/28/2007 [Mr. Glover] was re-assigned to Field Services Detainer Section * * *"

**{¶6}** Thereafter, on March 7, 2019, Georgia's Department of Corrections released Mr. Glover and he was subsequently detained by a U.S. Marshall and returned to the state of Ohio. (*Id.* at ¶ 13) On April 10, 2019, the OAPA conducted a release violation hearing and revoked Mr. Glover's parole based on his convictions in Georgia. (*Id.*) The OAPA denied his request for a reconsideration hearing on June 27, 2019. (*Id.*) Mr. Glover will not be eligible for another parole hearing until 2021. (*Id.*) As a result of the parole revocation, 8,449 days were added to Mr. Glover's maximum sentence date. (*Id.*)

**{¶7}** On March 26, 2020, Mr. May filed a Motion to Dismiss, or, Alternatively, for Summary Judgment. In a Judgment Entry filed on April 3, 2020, we converted the Motion to Dismiss to a Motion for Summary Judgment and ordered Mr. Glover to file his response within 14 days. On April 15, 2020, Mr. Glover filed a motion requesting an extension of time to file his response so he could conduct additional discovery to oppose the summary judgment motion. On April 21, 2020, we granted Mr. Glover's motion. On May 13, 2020, Mr. Glover filed his Memorandum in Opposition to Mr. May's summary judgment motion. Mr. May filed a reply in support of his summary judgment motion on May 26, 2020.

## SUMMARY JUDGMENT STANDARD AND HABEAS CORPUS RELIEF

**{¶8}** Summary judgment may be granted "when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12, quoting Civ.R. 56(C).

**{¶9}** "To be entitled to a writ of habeas corpus, a petitioner must show that he is being unlawfully restrained of his liberty and that he is entitled to immediate release from prison or confinement." *State ex rel. Whitt v. Harris*, 157 Ohio St.3d 384, 2019-Ohio-4113, ¶ 6, citing R.C. 2725.01; *State ex rel. Cannon v. Mohr*, 155 Ohio St.3d 213, 2018-Ohio-4184, 120 N.E.3d 776, ¶10. Habeas corpus is not available when an adequate remedy at law exists. *Billiter v. Banks*, 135 Ohio St.3d 426, 2013-Ohio-1719, 988 N.E.2d 556, ¶8. However, "habeas corpus will lie in certain extraordinary circumstances where there is an unlawful restraint of a person's liberty, notwithstanding the fact that only nonjurisdictional issues are involved, but only where there is no adequate legal remedy, e.g., appeal or postconviction relief." *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 186, 652 N.E.2d 746 (1995). Further, even when an adequate remedy does not exist, habeas corpus relief generally is appropriate only when "the petitioner's maximum sentence has expired and he is being held unlawfully." *Heddleston v. Mack*, 84 Ohio St.3d 213, 214, 702 N.E.2d 1198 (1998).

## ANALYSIS

### A. Failure to attach commitment papers

**{¶10}** As with his previous Petition for Writ of Habeas Corpus, Mr. Glover did not attach all of his commitment papers as required by R.C. 2725.04(D). This statute requires, "[a] copy of the commitment or cause of detention of such person shall be exhibited, if it can be procured without impairing the efficiency of the remedy; or, if the imprisonment or detention is without legal authority, such fact must appeal." The Ohio Supreme Court explained in *Bloss v. Rogers*, 65 Ohio St.3d 145, 146, 602 N.E.2d 602 (1992):

These commitment papers are necessary for a complete understanding of the petition. Without them, the petition is fatally defective. When a petition is presented to a court that does not comply with R.C. 2725.04(D), there is no showing of how the commitment was procured and there is nothing before the court on which to make a determined judgment except, of course, the bare allegations of petitioner's application.

(Citations omitted.)

{¶11} Mr. May points out in his Reply in support of his summary judgment motion that Mr. Glover failed to attach a number of documents, including parole papers from the 1980s and 1990s, 2019 parole revocation documents, 1994 and 1996 Georgia sentencing entries, and 1997 Georgia parole/probation or release documentation. (MSJ at pp. 2-3) This lack of commitment papers renders Mr. Glover's petition fatally defective and subject to dismissal. *Fugett v. Turner*, 140 Ohio St.3d 1, 2014-Ohio-1934, 14 N.E.3d 984, ¶ 2.

{¶12} However, Mr. Glover cites the language of the statute that indicates the commitment papers are only required "if [they] can be procured without impairing the efficiency of the remedy." He argues he attempted to retrieve the missing documents and the delay in procuring nearly 40 years of records would have impaired the efficiency of his remedy. (Memo in Opp. to MSJ at p. 5)

{¶13} At this point, although the lack of these documents clearly serves as a basis to dismiss Mr. Glover's Petition for Writ of Habeas Corpus, we prefer to address this matter on the merits to preclude a third filing of his Petition for Writ of Habeas Corpus. Further, we do not believe the missing documents impairs our ability to address the narrow issues presented in Mr. Glover's petition.

### B. Timeliness of issuance of detainer

{¶14} Mr. Glover maintains "the OAPA failed to pursue and declare [him] a parole violator within a reasonable period of time, thereby depriving him of his right to due process." (Petition at ¶ 16) This argument consists of two separate sub-arguments. First, whether the OAPA's issuance of the detainer was timely and second, whether the OAPA timely conducted Mr. Glover's parole revocation hearing.

{¶15} With regard to the timelines of the issuance of the detainer, Mr. Glover contends the OAPA waited over two years after his conviction in 2004, in Georgia, to notify him that he was being charged with a parole violation and a detainer was not issued to Georgia until 2006. (*Id.* at 31) Mr. Glover claims this amounted to a due process violation because he was left in a state of uncertainty not knowing what his future may hold. (*Id.* at ¶¶ 31, 32) Mr. Glover concludes that if the OAPA was going to act on some authority/detainer, it should have done so in 1997, upon his first release from Georgia's custody, not in 2006 when it issued the detainer to Georgia officials. (Memo. Opp. to MSJ at p. 11)

{¶16} Petitioner made a similar argument in *Cline v. Haskins*, 175 Ohio St. 480, 196 N.E.2d 440 (1964), where petitioner challenged a delay in the issuance of a detainer. In *Cline*, during the years between 1950 and 1960, petitioner was incarcerated once in Florida and twice in Tennessee. *Id.* at 440-441. During this ten-year time period, the state of Ohio placed no detainers on petitioner when he was incarcerated and undertook no efforts to return him to Ohio. *Id.* at 441. In 1960, petitioner returned to Cincinnati and was subsequently recognized as the person who escaped from the workhouse in 1950. *Id.* He

was tried and sentenced for escape. *Id.* In 1962, petitioner was released from confinement, but held for the parole officer and returned to prison in 1962. *Id.*

**{¶17}** As Mr. Glover does here, the petitioner in *Cline* sought habeas corpus relief arguing the state of Ohio's failure to act waived any right to require him to fulfill his obligation under the original 1943 sentence. *Id.* The Ohio Supreme Court rejected any notion the state of Ohio had a duty to act to pursue petitioner, even if the state knew of his whereabouts. *Id.* Specifically, the Court stated:

> [W]here a paroled convict violates his parole, there is no affirmative duty upon the state to place detainers on him or pursue him so as to return him to custody, and the state by its inaction creates neither an estoppel nor a waiver of its right to exact the penalty imposed under the conviction when it once again takes him into custody. (Citations omitted.)

(Emphasis added.) *Id.*

**{¶18}** Under *Cline*, we conclude Mr. Glover was not denied due process when the state of Ohio did not issue a detainer prior to 2006. The OAPA had no affirmative duty to place a detainer upon him because the burden was on Mr. Glover to serve his sentence. *See Cline* at 441. For these reasons, we find no due process violation occurred when the OAPA waited until 2006 to issue a detainer to Georgia's Department of Corrections.

## C. Timeliness of parole revocation hearing

**{¶19}** With regard to the timeliness of his parole revocation hearing, Mr. Glover claims he is a member of the *Kellogg v. Shoemaker* class and therefore, he was entitled to a mitigation hearing that comports with due process requirements outlined in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). (Petition at ¶ 18) "[This]

class is composed of persons who were charged with an offense prior to September 1, 1992 and whose parole was revoked after that date because of conviction of a new felony." *Jackson v. Ohio Adult Parole Auth.*, 4th Dist. Pickaway No. 03CA12, 2003-Ohio-3996, ¶ 2.

**{¶20}** Even if we assume Mr. Glover is a member of the *Kellogg* class, he was not denied due process because his revocation hearing complied with the consent decree. As alleged by Mr. Glover in his petition, he was released from the Georgia Department of Corrections on March 7, 2019 and the OAPA conducted a violation hearing and based on his Georgia convictions revoked his probation on April 10, 2019. (Petition at ¶ 13) Mr. Glover cites *Flenoy v. Ohio Adult Parole Auth.*, 56 Ohio St.3d 131, 564 N.E.2d 1060 (1990) for the proposition that a decision to revoke parole must be made within a reasonable period of time. (*Id.* at ¶ 19)

**{¶21}** The *Flenoy* decision references *Coleman v. Stobbs*, 23 Ohio St.3d 137, 139, 491 N.E.2d 1126 (1986), where the Court set forth the following two-part test to determine whether the OAPA's delay in holding a final revocation hearing entitles an alleged parole violator to relief:

> First, the court must determine whether the delay was unreasonable. "This involves the consideration and balancing of three factors: (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time." Second, the court must determine "whether the delay * * * prejudiced the alleged parole violator."

**{¶22}** The only remedy for a delayed parole revocation hearing is the quashing of the parole violator's warrant. *Hamilton v. Keiter*, 16 Ohio Misc. 260, 264-265, 241 N.E.2d 296 (C.P.1968). Because this remedy is so drastic, a court should take "a hesitant approach" to finding a violation. (Citation omitted.) *Flenoy* at 134.

**{¶23}** Here, we cannot find the OAPA subjected Mr. Glover to an unreasonable delay in conducting his parole revocation hearing. Approximately 34 days passed between the time he was released from the Georgia Department of Corrections and his violation hearing. Mr. Glover cites no case law that has found 34 days to be an unreasonable delay. Further, Mr. Glover presents no evidence that he requested a "timely" parole revocation hearing upon his return to Ohio. *See State v. Tibbals*, 149 Ohio St.3d 656, 2017-Ohio-829, 77 N.E.3d 909, ¶¶ 22-23, where the Ohio Supreme Court held that even if an inmate was a member of the *Kellogg* class, the inmate's parole revocation complied with the consent decree because the inmate received a revocation hearing one month after being released from federal custody to custody of OAPA.

**{¶24}** Finally, we note because Mr. Glover was serving a sentence in Georgia while on parole for his Ohio sentence, he was not entitled to a revocation hearing until the OAPA took custody of him after he completed his Georgia sentence. "Neither due process of law nor R.C. 2967.15's or former Ohio Adm. Code 5120:1-1-19(A)'s 'reasonable time' requirement compels a final revocation parole hearing while an alleged parole violator is imprisoned pending prosecution for, or after conviction of, another crime." *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 125, 609 N.E.2d 546 (1993). *See also State ex rel. Brantley v. Ghee*, 83 Ohio St.3d 521, 522, 700 N.E.2d 1258 (1998) ("The

APA has no legal duty to hold a final parole revocation hearing for Brantley during the time he is incarcerated on new criminal charges.")

**{¶25}** For these reasons, we find Mr. Glover was not denied due process with regard to the timing of his parole revocation hearing.

D. <u>Credit for Ohio sentence for parole time and time served in Georgia</u>

**{¶26}** Finally, Mr. Glover contends he should receive credit toward his sentence in Ohio, for the time he was in Georgia, including while incarcerated, because he was not granted a final hearing and confirmed subject to revocation until April 2019. (Writ at ¶ 39)

**{¶27}** R.C. 2967.15(C)(1) provides, in pertinent part: "The time between the date on which a person who is a parolee or other releasee is declared to be a violator * * * and the date on which that person is returned to custody in this state under the immediate control of the adult parole authority shall not be counted as time served under the sentence imposed on that person." Exhibit A, a letter dated February 18, 2020, from the Department of Rehabilitation and Correction, and attached to Mr. May's summary judgment motion, indicates on January 27, 1996, Mr. Glover was declared a "Parole Violator in Custody due to unavailability to the Adult Parole Authority while incarcerated in Georgia."

**{¶28}** Under R.C. 2967.15(C)(1) and Ohio Supreme Court precedent, Mr. Glover is not entitled to credit for time served in Georgia. *See Marsh v. Tibbals*, 2017-Ohio-829, at ¶¶ 19-20 (Inmate serving sentence for federal convictions while on parole for his state sentence, was not entitled to credit for time served in federal detention against any state sentence resulting from parole violations.); *State ex rel. Gillen v. Ohio Adult Parole Auth.*, 72 Ohio St.3d 381, 650 N.E.2d 454 (1995) (Parole violator was not entitled to credit for

time served in New York while he was an Ohio parole violator.); and *Hignite v. Cardwell*, 22 Ohio St.2d 146, 258 N.E.2d 443 (1970) ("Under the terms of this statute, [R.C. 2967.15] the period from July 6, 1960, when petitioner was declared a parole violator, to November 29, 2965, (sic) when petitioner become (sic) 'available for return to the institution,' is not to be counted as part of time or sentence served.").

{¶29} For the foregoing reasons, we grant Mr. May's Motion for Summary Judgment. Mr. Glover is not entitled to habeas corpus relief because no genuine issues of material fact exist concerning whether he has served his maximum sentence or is being unlawfully held. We also deny Mr. Glover's request for an oral hearing in this matter. The clerk of courts is hereby instructed to serve upon all parties not in default notice of this judgment and its date of entry upon the journal. *See* Civ.R. 58(B).

{¶30} RESPONDENT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.

{¶31} PETITION FOR WRIT OF HABEAS CORPUS IS DISMISSED.

{¶32} COSTS TO PETITIONER.

{¶33} IT IS SO ORDERED.

By: Wise, John, J.
Hoffman, P. J., and
Wise, Earle, J., concur.


JWW/ac