Bobby **BREWER**, Petitioner–Appellant,

v.

**Eric G. DAHLBERG, Respondent– Appellee.**

**No. 90–3728.**

United States Court of Appeals, Sixth Circuit.

Submitted July 29, 1991.

Decided Aug. 13, 1991.

Terry H. Gilbert, on brief, Friedman & Gilbert, Cleveland, Ohio, for petitioner-appellant.

Gerald E. Dailey, Stuart A. Cole, Asst. Atty. Gen., on brief, and Jack W. Decker, Office of the Atty. Gen. of Ohio, Columbus, Ohio, for respondent-appellee.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner-appellant, Bobby Brewer, appeals the district court's dismissal of his writ of habeas corpus against Eric G. Dahlberg, respondent-appellee, for failure to exhaust state remedies. For the following reasons, we affirm.

I.

˙ This is an action in habeas corpus appealing the district court's dismissal of the writ for failure to exhaust state remedies. Petitioner challenges the constitutional sufficiency of the revocation of his parole in June 1988, which resulted in petitioner's subsequent confinement.[1] Respondent asserted that petitioner had not exhausted all available state remedies and that an action in state court for a writ of mandamus would lie as an available remedy. Upon review, the United States magistrate found that mandamus would not lie, that petitioner had exhausted all available state remedies, that petitioner's due process rights under the Fourteenth Amendment had been violated, and that the petition for habeas corpus should be granted. The district judge rejected, in part, the report and recommendation of the U.S. magistrate and stated that an action in state court for a writ of mandamus was available as a remedy to petitioner. Without deciding the merits of petitioner's constitutional claim, the district judge dismissed the petition on the ground that petitioner had failed to exhaust state remedies. Petitioner now appeals that decision and seeks relief in habeas corpus pursuant to 28 U.S.C. § 2254.

II.

This case arises as a result of petitioner's concurrent federal and state sentences and the way the state of Ohio handled petitioner's parole after his release from imprisonment for his state offense.

Petitioner was convicted in state court on September 23, 1980 on one count of aggravated robbery for which he was sentenced to a term of incarceration of four to twenty-five years. In February 1981, petitioner was also convicted in the Southern District of Ohio on federal charges, arising from the possession of a stolen United States Treasury check, for which he was sentenced to a term of incarceration of two years, to run concurrently with his state sentence. Based upon his federal conviction, a detainer was lodged with the Ohio authorities by the United States Marshals Service, to be operative in the event that petitioner was released from state confinement before February 1983, when his federal sentence ended.

On January 13, 1982, the Ohio Adult Parole Authority (hereinafter, "OAPA") in-

---

1. At the time this action was instituted, petitioner was confined at the Mansfield Reformatory within the district of the Northern District of Ohio. Although petitioner has been released from incarceration, he is under the constructive custody of the Ohio Adult Parole Authority ("OAPA") as a parolee.

formed petitioner that he would be paroled from state custody and issued a form, which petitioner signed, captioned "Statement of Parole Agreement," which stated in part as follows:

The Members of the Parole Board have agreed that you have earned the opportunity of parole and eventually a final release from your present conviction. The Parole Board is therefore ordering a Parole Release in your case.

. . . .

The following Conditions of Parole are in effect in your Parole Release:

1.  Upon release from the institution, report as instructed to your Parole Officer (or any other person designated) and thereafter report as often as directed.

. . . .

5.  Follow all instructions given you by your Parole Officer or other officials of the Adult Parole Authority and abide by any special conditions imposed by the Adult Parole Authority.

. . . .

7.  Special Conditions:

NOTIFY DETAINER

U.S. Marshal

Cincinnati, Ohio

On that same date, petitioner executed two forms, the first of which is captioned "Parole and Probation Form V—Application For Compact Services," and reads:

I, Bobby Brewer, Le CI R–113–903, hereby apply for supervision as a parolee or probationer pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. I understand that the very fact that supervision will be in another state makes it likely that there will be certain differences between the supervision I will receive in any state to which I am asking to go. I urge the authorities to whom this application is made, and all other judicial and administrative authorities, to recognize that supervision in another state, if granted as requested in this application, will be a benefit to me and will improve my opportunities to make a good adjustment. In order to get the advantages of supervision of Parolees and Probationers, I do hereby accept such differences in the course and character of supervision as may be provided, and I do state that I consider the benefits of supervision under the Compact to be worth any adjustment in my situation which may be occasioned.

In view of the above, I do hereby apply for permission to be supervised on (PAROLE) in Nebraska, for the following reasons: [blank space left uncompleted].

I (have read the above) (have had the above read and explained to me), and I understand its meaning and agree thereto.

Although no statement of reasons for requesting a transfer of parole supervision to Nebraska was included in the form, another document issued contemporaneously, "Parole and Probation Form III—Agreement To Return," states:

I, Bobby Brewer, Le CI R–113–903, in consideration of being granted (parole) by the Ohio Adult Parole Authority and especially being granted the privilege to leave the state of Ohio to go to Nebraska, hereby agree:

1.  That I will make my home with Mrs. Blanche Brewer Bell, 4319 Larimore Avenue, Omaha, Nebraska, until a change of residence is duly authorized by the proper authorities of Nebraska.

2.  That I will comply with the conditions of (parole) as fixed by both the states of Ohio and Nebraska.

3.  That I will, when duly instructed by the Ohio Adult Parole Authority return at any time to the state of Ohio.

4.  That I hereby do waive extradition to the state of Ohio from any jurisdiction in or outside the United States where I may be found and also agree that I will not contest any effort by any jurisdiction to return me to the state of Ohio.

5.  Failure to comply with the above will be deemed to be violation of the terms and conditions of parole for which I may be returned to the state of Ohio.

On February 24, 1982, petitioner was issued a Certificate of Parole by the state of Ohio. It stated "parole effective February 25, 1982." It then stated, by the insertion of "X" marks on various lines:

To Go Immediately Following Your Release By Detaining Authorities Directly To: The Adult Parole Authority Office, 1050 Freeway Drive—North, Columbus, Ohio, ZIP 43229 . . . .

Your Arrival There Must Be Reported To: Mr. Frank Mecum, Placement Coordinator,

X In Person immediately on your arrival in Columbus, Ohio, in order that you may receive further parole instructions and placement assistance.

THIS PAROLE will require you to maintain conduct at all times in compliance with the rules set forth by the Ohio Adult Parole Authority, and with any special conditions or instructions imposed by the Ohio Parole Board or by your parole officer.

TO WIT: SPECIAL CONDITIONS INSTRUCTIONS: Parole to Federal Detainer, if not picked up, continue to 2/82.

THIS PAROLE will start upon your release by detaining authorities and will continue

XXX For a period of not less than one year when you will become eligible for final release consideration provided you have maintained satisfactory conduct and adjustment. Your parole may be extended or revoked if you fail to comply with these requirements (emphasis added).

The "Certificate of Parole" did not contain any definition of "detaining authorities," nor did it explain what "Parole to Federal Detainer" meant.

Also dated February 24, 1982 is a form letter to petitioner from the OAPA called "Parole Instructions." At the top of the instruction notice, there appeared lines for "Parole o/a" and "Release effective," both of which had been completed by insertion of the date February 25, 1982. In full text, that letter informed petitioner as follows:

Your placement or plans for parole have not been approved to date. We are in-

formed, however, that you will be released into custody of U.S. Marshal.

The Ohio Adult Parole Authority will consider your Ohio parole status to be inactive while you are in custody of the above-named authorities, or under confinement imposed by said authority.

Upon your release under bond, probation, parole, or otherwise, from custody or confinement, you are to immediately report your temporary or permanent address to the Ohio Adult Parole Authority, 1050 Freeway Drive—North, Columbus, Ohio—ZIP 43229, and await further instructions. It is imperative that you report such information promptly as your Ohio parole status could be placed in jeopardy.

In the event of your imprisonment in another state as a result of the above detainer disposition, we are requesting that you notify the Ohio Adult Parole Authority approximately sixty (60) days prior to your tentative release date, thereby furnishing all information pertinent to your current parole placement plans. The Ohio Adult Parole Authority will then endeavor to complete arrangements for your parole supervision in accordance with such plans.

*You will be placed under active parole supervision following your release from custody or confinement when placement and parole supervision plan is approved. You will then continue on parole for a period of one year.* Your parole is a privilege granted by the State of Ohio to allow you to complete your sentence outside of confinement. We hope that you will, therefore, direct your efforts toward achievement of acceptable social and economic standards as well as good citizenship (emphasis added).

Upon his release from state confinement, petitioner was picked up by the federal authorities and incarcerated in a federal correctional institution in Memphis, Tennessee.

On June 30, 1982, petitioner was issued a "Notice of Action," ordering his parole on the federal sentence effective August 26,

1982. On July 9, 1982, a "Detainer Action Letter" was sent from the Memphis federal prison in Memphis to the Ohio Department of Corrections, stating:

Subject was released to Federal custody in February, 1982. Our records indicate he has supervision on his Ohio term until July 10, 2005. Please be advised that he will be paroled on his federal term on August 26, 1982. *If you desire additional information, please advise* (emphasis added).

There is nothing in the record indicating that the Ohio authorities made any response to this notification.

On August 9th, 1982, Mr. Tom Brock, a United States Probation Officer for the Eastern Division of Arkansas, wrote the Warden of the Memphis facility, Mr. Jerry O'Brien, regarding petitioner. In that letter, Mr. Brock stated that he had reviewed and approved petitioner's release plan, which called for petitioner to reside with his mother, Ms. Opal Brewer, at Route 2, Box 9, Jane Street, West Helena, Arkansas, and to be employed part-time at the Holiday Inn of Helena. Mr. O'Brien was requested to instruct petitioner to contact Mr. Brock immediately upon arrival in the Helena area.

On August 11th, 1982, Warden O'Brien wrote the United States Parole Board, requesting issuance of petitioner's parole certificate. In the course of that letter he stated:

[Petitioner's] full term expires February 26, 1983. Mr. Brewer is currently on parole with the state of Ohio. They have requested that we notify them when he is released on federal parole.

Mr. Tom Brock, United States Probation Officer has approved the following parole plan submitted by Mr. Brewer:

Mr. Brewer plans to reside with his mother, Ms. Opal Brewer, at Route 2, Box 9, Jane Street, West Helena, Arkansas, and will be employed on a part-time basis at the Holiday Inn of West Helena by Mr. James W. Smith, General Manager. We have attached a copy of this plan for review and consideration.

On August 26th, 1982, petitioner received his federal "Certificate of Parole," which on its face required that "he remain within the limits of Eastern District of Arkansas until February 26, 1983," and which set out among the conditions of parole that petitioner go directly to the district to which he was paroled and that he "shall not leave the limits fixed by this CERTIFICATE OF PAROLE without written permission from the probation officer." It appears that upon his release from the federal institution, petitioner reported promptly to Mr. Brock and that he complied with all the terms and conditions of his federal parole over the ensuing six months until his full federal sentence expired in February 1983.

Pursuant to a form captioned "Notice of Discharge," dated February 28, 1983, petitioner was notified that he had satisfactorily completed his parole conditions and would be released from supervision. The form stated:

Date sentence imposed <u>2-27-81 SD Ohio</u>
Date sentence expired <u>2-26-83</u>

Inasmuch as you completed service on the date shown above, you are hereby discharged from supervision of this office on the above sentence.

| 2-28-83 | Eastern/Arkansas | (signed) |
|---|---|---|
| Date | District of Supervision | Probation Officer |

Bearing the same date as the form notice (February 28, 1983) is a letter directed to petitioner by Mr. Brock, his probation officer, which stated in pertinent part:

Please be advised that effective February 26, 1983, your parole terminated. I would like to extend to you best wishes in the future and if this office can ever be of assistance to you, please do not hesitate to contact us.

At the time of petitioner's release from parole supervision by the federal authorities, no state detainer had been placed upon him by the state of Ohio. This fact is indicated by the following letter addressed to petitioner from the federal authorities dated February 13, 1989, which states in pertinent part:

Our Record Office is in receipt of your letter dated January 29, 1989, requesting

information regarding your release from our institution in 1982. . . .

You were not released to a detainer and it appears there was no notify (sic) for Ohio State authorities. . . .

There is nothing in the record indicating that during the six months petitioner was under active federal parole supervision in Arkansas that the Ohio authorities, who had been put on notice of that supervision, made any attempt to communicate with him, either directly or through his federal parole officer, or that he was ever advised by anyone that he had not satisfied his parole obligation to the state of Ohio.

Petitioner asserts that he believed that when he received the notice informing him that he was discharged from parole, that such release was not only for federal parole but also for state parole. Petitioner contends that such belief was reinforced (1) by the absence of any advice or notification to the contrary by either the federal or state authorities, and (2) by the fact that the effective date of his release from parole by Mr. Brock in February 1983 was one year after he had been released from state incarceration in February 1982. Petitioner asserts that the Ohio forms informed petitioner that his state parole term would be for at least one year after his release from the detaining authority. Because the dates coincided, he reasonably believed that Mr. Brock's letter meant he was released from both federal and state parole.

It would appear that the first attempt by the Ohio authorities to reestablish contact with petitioner took place in late April 1983. An OAPA memorandum, dated May 6, 1983, and designated as "Case Review from Frank Mecum, Placement Coordinator," states that information received from the federal authorities indicated that petitioner had been released on August 26, 1982 to reside with his father (the release plan specified his mother) at an address on James Street (the correct address was on Jane Street), and continues:

Accordingly, we attempted to locate this individual and place him under active supervision, via the Interstate compact. Documentation received in this office from the authorities in Arkansas indicate that upon contact with subject's father, Mr. Alex Brewer, on 4–20–83, it was learned that subject had departed the area with the intention of returning to the State of Ohio, approximately two weeks prior to contact date.

At the current time the subject's whereabouts are unknown. In light of the facts, it is requested that subject be declared PVAL [parole violator-at-large].

While it is correct that at about that time petitioner, allegedly believing himself free from both federal and state restraint, had left the residence on Jane Street, he did not return to Ohio. Rather, he moved to Omaha, Nebraska.

On May 17, 1983, apparently consequent to Mr. Mecum's request, petitioner was declared by the state of Ohio to be a parole violator-at-large effective May 6, 1983. No action appears to have been taken in regard to the present case for the next four years. Then on July 15, 1987, a memo was forwarded from an OAPA case review analyst to the Interstate Compact Section, stating:

Subject has been located at 2211 Howard Street, Apt. 26, Omaha, Nebraska. Please request compact supervision.[2]

Five months later on December 11, 1987, the Ohio Interstate Compact Deputy Administrator forwarded a memo to Nebraska, stating:

Our Case Review Section has learned that subject is living at 2211 Howard Street, Apt. 26, Omaha Nebraska (451–5719). *He has been in PVAL status since 5/6/83.* We are attaching his Ohio material and Compact forms and requesting if you will see if you can contact him *and consider him for supervision* (emphasis added).

In a letter dated December 28, 1987, an official of the Nebraska Adult Parole Ad-

2. How this information came to the attention of the Ohio authorities is not reflected in the record.

ministration informed the Ohio correctional authorities that Nebraska would not accept petitioner for supervision. The reasons for the refusal to accept petitioner into parole supervision were that petitioner was not deemed by Nebraska authorities to be a "resident of the State of Nebraska as defined by the Interstate Compact Agreement," and that petitioner would not be an acceptable candidate for parole supervision as a consequence of having entered pleas of guilty in Nebraska to several criminal charges, including carrying a concealed weapon, disorderly conduct, and resisting arrest during 1986 and 1987 (more than three years after he had been released from federal parole). There is no indication that any prior attempt had been made to contact petitioner by the Ohio or Nebraska authorities to inform him of his status as a declared parole violator-at-large. There is also nothing in the record to indicate that subsequent to receiving the above communication, the Ohio officials made any attempt to contact petitioner. Instead, several weeks later (January 13, 1988), the OAPA issued to the police department in Omaha, Nebraska, a state warrant for his arrest. A second warrant for petitioner's arrest was issued on May 3, 1988 to the state police in West Helena, Arkansas. Shortly thereafter, petitioner was arrested and returned to the state of Ohio.

Petitioner was notified of his parole revocation hearing rights and the alleged parole violations that would be considered at the hearing, which consisted of the criminal offenses he had pled guilty to in Nebraska. Significantly, failure to report to the Ohio parole authorities in 1983 was not listed and there was no reference to petitioner's having been declared a parole violator-at-large in May 1983.

On June 13, 1988 after a final hearing, petitioner was found to be a parole violator based upon the acts for which he was convicted in the Nebraska courts in 1986 and 1987. The final determination of parole violation contained no reference to petitioner's failure to report to the Ohio parole authorities in 1983.

Petitioner was subsequently reincarcerated in Ohio for violating the conditions of his parole under his 1980 state conviction and is presently under constructive confinement by the Ohio Adult Parole Authority as a parolee.

Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio on April 12, 1989. The basis of his claim for relief is that the conditions of the Ohio state parole regarding its commencement and duration and the relationship between the state and federal parole periods were so vague and unclear that declaring him a parole violator-at-large in May 1983 and imprisoning him in 1988 based upon violations of parole for conduct occurring in 1986 and 1987 constitutes a violation of his due process rights under the Fourteenth Amendment. Petitioner contends that the Ohio Adult Parole Authority Certificate of Parole, which stated that "parole will start upon your release by detaining authorities and will continue for a period of not less than one year" and "Release Effective February 25, 1982 by detaining authorities" led him to believe that his state parole began on February 25, 1982 and was effective for one year. This belief was reinforced by the February 24, 1982 parole instruction letter, which stated that his state parole would begin upon release from "custody or confinement" and "continue for a period of one year." Petitioner contends that the term "custody or confinement" is vague and that he reasonably interpreted it to mean "release from state imprisonment" rather than "release from federal parole." Petitioner asserts that when he received a letter from Mr. Brock, his parole officer, stating that effective February 26, 1983, his parole was terminated, he reasonably believed that both his Ohio and federal paroles had been terminated because he had been told by the Ohio authorities that his Ohio parole would be eligible to be terminated one year after his release by the "detaining authority" from "confinement or custody."

Petitioner asserts that the conditions of his Ohio parole with respect to its commencement and termination dates were un-

constitutionally vague, that he was fully justified in assuming that his state and federal paroles were coincidental, and that upon his release from parole by the federal authorities, he reasonably believed that he had satisfied his obligations to both authorities. Petitioner seeks a reversal of the OAPA decision to revoke his parole on the ground that his status as an Ohio parolee terminated on February 26, 1983.

### III.

■ Respondent argues that the present case is moot because petitioner is no longer incarcerated. Respondent argues that even if this court were to find that it was unconstitutional for the OAPA to revoke petitioner's parole and reincarcerate him, the remedy would be to reverse the decision to revoke petitioner's parole and return him to parole status. Since petitioner is no longer incarcerated for his parole revocation and is "out on parole" again, the judgment would merely return petitioner to his current status.

However, contrary to respondent's contention, this is not the relief which petitioner seeks. Petitioner is asking this court to declare that he is no longer a parolee and should not be subject to the constructive custody of the OAPA, because his status as a parolee for the 1980 Ohio state conviction terminated on February 26, 1983. Petitioner is in essence arguing that because the conditions of his Ohio parole were unconstitutionally vague, the OAPA's actions in regard to petitioner after February 26, 1983 were invalid because they no longer had custody over him. Because petitioner is not merely asking that his parole revocation be declared invalid but also is asserting that he is no longer a parolee, this case is not moot.

### IV.

■ We must next decide whether the district court erred in determining that petitioner failed to exhaust the state remedy of mandamus.

Ohio Rev.Code Ann. § 2731.01 defines mandamus as "a writ, issued in the name of the state to an inferior tribunal ... commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station."

The Ohio Supreme Court has stated that to be entitled to a writ of mandamus, petitioner must demonstrate that he has a clear legal right to the relief prayed for, that respondents are under a clear legal duty to perform the requested act, and the petitioner has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle,* 6 Ohio St.3d 28, 29, 451 N.E.2d 225, *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). Likewise, this court in *Rayborn v. Jones,* 282 F.2d 410, 412 (6th Cir.1960) held that before the extraordinary remedy of mandamus is available to a state prisoner, he must establish that he has a clear and certain right and the duties of the respondent warden are ministerial, plainly defined and peremptory.

Although the Supreme Court in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 2105–06, 60 L.Ed.2d 668 (1979) held that there is no constitutional right to be conditionally released on parole before the expiration of a valid sentence, once parole has been granted, a parolee has certain constitutional rights before parole can be revoked. Specific rights of parolees were established by the Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and include: (1) an informal hearing prior to parole revocation; (2) prior written notice of the inquiry, its purpose, and the alleged violations; (3) disclosure to the parolee of the evidence against him; (4) the opportunity to present witnesses and documentary evidence; (5) the right to confront and cross-examine adverse witnesses; (6) a "neutral and detached" hearing body; and (7) a statement of the reasons for revoking parole. *Id.* at 489, 92 S.Ct. at 2604.

Following the Supreme Court's decision in *Morrissey,* the Ohio courts have heard petitions for a writ of mandamus in the following cases in which the petitioners alleged that a clear legal duty as defined in

*Morrissey* had been violated: *State ex rel. Atkins v. Denton,* 63 Ohio St.2d 192, 193, 406 N.E.2d 1390 (1980) (petitioner alleged the OAPA failed to provide written notice of the claimed violations of parole and failed to provide him with a final written explanation for revoking parole); *State ex rel. Jackson v. Denton,* 5 Ohio St.3d 179, 180, 449 N.E.2d 1288 (1983) (no clear legal duty to conduct revocation hearing within 60 days); *State ex rel. Ferguson v. Ohio Adult Parole Authority,* 45 Ohio St.3d 355, 356, 544 N.E.2d 674 (1989) (granting of parole [as opposed to parole revocation] does not constitute a liberty interest upon which petitioner can base a due process claim; applicable regulations were not violated because delay in revocation hearing was for just cause).

Contrary to the district court's assertion, these cases did not hold that the Parole Board did not abuse its discretion, but instead held that no clear legal duty had been violated.[3] We do not believe that an Ohio court has ever held that a writ of mandamus will lie to review the discretionary actions of the OAPA. *See Swiss v. Ohio Pardon & Parole Commission,* 117 Ohio App. 141, 142, 191 N.E.2d 186 (1963).

Unless a parolee can establish a clear legal duty, the Ohio courts have properly held that a petition for a writ of mandamus is not the appropriate remedy. In *State ex rel. Lipschutz v. Shoemaker,* 49 Ohio St.3d 88, 551 N.E.2d 160 (1990), the petitioner sought a writ of mandamus ordering another parole hearing in which the Parole Board would be instructed to disregard crimes not resulting in conviction. The Ohio Supreme Court, finding no clear legal duty on the Parole Board's part to disregard crimes not resulting in conviction, denied the writ. *Id.* at 90, 551 N.E.2d 160.

In *State ex rel. Mapson v. Ohio Adult Parole Authority,* 41 Ohio St.3d 16, 535 N.E.2d 296 (1989), the Ohio Supreme Court considered petitioner's claim that his parole had been denied in retaliation for filing a civil complaint against the officials of the Marion Correctional Institution, because a denial based on retaliatory motives would be a clear violation of the law. The court found that there was insufficient evidence supporting this allegation, and, therefore, petitioner did "not demonstrate that he has a clear legal right to the relief sought." *Id.* at 16, 535 N.E.2d 296.

In *State ex rel. Nedea v. Capots,* 40 Ohio St.3d 74, 531 N.E.2d 707 (1988), the parolee claimed that his procedural due process rights had been denied at his parole revocation hearing because his appointed counsel at the hearing was ineffective. The Ohio Supreme Court refused to hear the constitutional claim of ineffectiveness of counsel on a petition for a writ of mandamus, because "it has never been affirmatively decided whether a parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." *Id.* at 75, 531 N.E.2d 707. The Court held that because the petitioner had not established a clear legal duty to counsel at all, the writ of mandamus was properly denied. *Id.*

We believe the present case is similar to *State ex rel. Nedea.* In *Nedea,* although a constitutional argument could be made that a parolee's procedural due process rights are violated if he has ineffective assistance of counsel, the Ohio Supreme Court refused to consider this constitutional claim because it was not one of the clearly established rights of parolees as enumerated in *Morrissey.* Similarly in the present case, there is presently no statutory or common law duty or case law clearly establishing the right of a parolee, who has served concurrent state and federal sentences, to supplemental explanatory notice of his conditions of parole in order to comply with the clear notice requirement of the Fourteenth Amendment. Because there is no clearly defined, pre-existing duty to perform such an act set forth in statute or case law, mandamus is not an appropriate remedy in the present case. The district court, therefore, erred in dismissing peti-

---

3. The term "abuse of discretion" does not appear once in these opinions. The district court accepted respondent's fallacious argument that if a decision of the OAPA is affirmed, it means the OAPA did not abuse its discretion and therefore the reviewing court may review discretionary acts of the OAPA.

tioner's petition for failure to exhaust the state remedy of mandamus.

### V.

■ Although we believe the district court erred in determining that the state remedy of mandamus is available to petitioner, we believe the district court was correct in dismissing the writ for failure to exhaust state remedies, because there is another state remedy available to petitioner, which has not been exhausted.

Under Ohio law, application for a writ of habeas corpus may be made by one who argues that he is illegally restrained of his liberty. Ohio Rev.Code Ann. § 2725.04 states in pertinent part:

Application for the writ of habeas corpus shall be by petition, signed and verified either by the party for whose relief it is intended, or by some person for him, and shall specify:

(A) That the person in whose behalf the application is made is imprisoned, or restrained of his liberty;

(B) The officer, or name of the person by whom the prisoner is so confined or restrained; or, if both are unknown or uncertain, such officer or person may be described by an assumed appellation and the person who is served with the writ is deemed the person intended;

(C) The place where the prisoner is so imprisoned or restrained, if known....

■ However, Ohio Rev.Code Ann. § 2725.05 significantly narrows the scope of the writ, stating:

Writ not allowed.

If it appears that a person alleged to be restrained of his liberty is in the custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ of habeas corpus shall not be allowed. If the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order.

In Ohio, there is, thus, a prohibition against issuing the writ when the petitioner is lawfully confined under the judgment of a court of competent jurisdiction. *See Coleman v. Stobbs,* 23 Ohio St.3d 137, 140, 491 N.E.2d 1126 (1986). The availability of Ohio's writ of habeas corpus is not co-extensive with the federal writ. *Allen v. Perini,* 424 F.2d 134, 139 (6th Cir.), *cert. denied,* 400 U.S. 906, 91 S.Ct. 147, 27 L.Ed.2d 143 (1970). A writ of habeas corpus will not be allowed in Ohio unless a petitioner alleges that he is being restrained by a court who lacked jurisdiction over him.

However, we do not believe the bar of § 2725.05 applies in the present case for the following reasons. In *In re Anderson,* 55 Ohio App.2d 199, 380 N.E.2d 368 (1978), the Ohio Court of Appeals found that a writ of habeas corpus should be granted when a parolee's reincarceration was without authority of law because the petitioner had already satisfied his judgment and the sentencing court no longer had jurisdiction over him. In *In re Anderson,* the petitioner had been released from incarceration for aggravated assault (the first sentence) under a program of shock probation. Before the probation period for the first sentence terminated, the petitioner was convicted of aggravated robbery (the second sentence). However, this conviction was reversed for ineffective assistance of counsel and then dismissed for lack of a speedy trial. *Id.* at 200, 380 N.E.2d 368. The *Anderson* court held that on the date the trial court in the first case had determined that the petitioner was a parole violator by reason of his conviction in the second case, he had already paid his debt to society under the sentence in the first case, because his conviction in the second case, which had been reversed, did not toll his probation period under the first sentence. Therefore, the probation violation hearing and probation revocation took place at a time after the probation period had actually ended, and the sentencing court no longer had jurisdiction over petitioner. *Id.* at 200–01, 380 N.E.2d 368. The *Anderson* court held that

all action taken in connection with the probation violation was outside the jurisdiction of the original sentencing court. *Id.* at 201, 380 N.E.2d 368.

The present case presents similar facts. Petitioner Brewer is contesting that at the time his parole was revoked, he had already paid his debt to society under the sentence imposed by the Ohio state sentencing court after being incarcerated for two years on a four to twenty-five year sentence, and after being informed by the OAPA that his state parole would last one year after his release from "the detaining authority," which reasonably led him to believe that his parole ended in February 1983 one year after his release from state prison.

In the present case, petitioner is in essence alleging that his reincarceration as a parole violator was illegal because the OAPA no longer had custody over him for the following reasons: (1) the OAPA led him to reasonably believe that his parole terminated in February 1983, one year after his release from confinement in state prison; (2) failed to place a detainer upon him upon his release from federal parole; and (3) failed to properly instruct the federal authorities upon his release as they had requested. Petitioner is alleging that he is being illegally restrained as a parolee under an order of the OAPA, which could not be issued under the authority of the sentencing court, because as of February 1983, the court no longer had jurisdiction over him. As in *In re Anderson,* petitioner maintains that he is presently being improperly held as a parolee under a judgment that has already been "satisfied," rather than under a void or voidable judgment.[4] Petitioner is contesting that all action taken in connection with his parole revocation grounded on his Nebraska offenses, which occurred in 1986 and 1987, was outside the jurisdiction of the original

sentencing court. The relief which petitioner seeks on review is for this court to declare that his state parole terminated in February 1983. If petitioner's constitutional claim has merit, petitioner would be entitled to relief in habeas corpus from his current custody by the OAPA, because he would be serving under an order which no longer could be issued under the jurisdiction of the sentencing court. *See In re Anderson,* 55 Ohio App.2d at 201, 380 N.E.2d 368. In *Padavick v. Cleveland Hgts.,* 34 Ohio St.2d 15, 295 N.E.2d 193 (1973), the Ohio Supreme Court dismissed a habeas petition because the petitioner failed "to question the jurisdiction of the sentencing court *or the custody of the restraining officer." Id.* at 16, 295 N.E.2d 193 (emphasis added). In the present case, in contrast, petitioner is questioning the custody of the restraining officer, maintaining that the OAPA no longer has custody over him because the judgment on his state conviction had been satisfied and the sentencing court no longer has jurisdiction over him.

Although the Ohio Supreme Court stated in *Sykes v. Kreiger,* 32 Ohio St.2d 132, 133, 290 N.E.2d 180 (1972) that habeas corpus is not available to review the action of the Ohio Adult Parole Authority, this court noted in *Williams v. Perini,* 557 F.2d 1221, 1224 (6th Cir.1977) that this statement is not as broad as it first appears. This court pointed out that the Ohio court in *Sykes* added in a footnote that it and prior Ohio cases stating that habeas review is unavailable to review actions of the OAPA had been decided prior to the announcement of *Morrissey v. Brewer,* in which the Supreme Court stated that parolees had specific constitutional rights. Also the *Sykes* court indicated that it did not consider the case a suitable vehicle for an in-depth analysis of the changing area of the law concerning

---

4. Ohio Rev.Code Ann. § 2953.21 is Ohio's post-conviction remedy statute, which by its terms applies only to void or voidable judgments. The court in *In re Anderson* held that under the facts of that case so much time had passed that when evidence of probation violation was heard, the matter was no longer in a post-conviction time frame. Rather, the petitioner was being held

under a satisfied judgment, not a void or voidable one. 55 Ohio App.2d at 201, 380 N.E.2d 368. We believe that the same is true in the present case. Petitioner Brewer is alleging that his sentence pursuant to his state conviction is over and done with. Therefore, he is alleging that he is being held under a satisfied judgment, not a void or voidable one.

the rights of parolees. 32 Ohio St.2d at 133, 290 N.E.2d 180. This court in *Williams* concluded:

> We can only infer from this statement that the Ohio Supreme Court did not intend its decision in *Sykes v. Kreiger* as any kind of blanket foreclosure of habeas review of Adult Parole Authority actions.

557 F.2d at 1224.

Moreover, *Stahl v. Shoemaker*, 50 Ohio St.2d 351, 364 N.E.2d 286 (1977) states that under Ohio law, although the writ of habeas corpus is available to parties who unlawfully are deprived of their liberty, it is unavailable to those deprived of their freedom pursuant to a lawful criminal sentence. *Id.* at 354, 364 N.E.2d 286. In the present case, plaintiff is not contesting the lawfulness of his original state criminal sentence, but like the petitioner in *In re Anderson*, he is asserting that at the time of his parole revocation, he had satisfied his original criminal sentence and then was unlawfully deprived of his liberty.

Moreover, there are Ohio cases which have allowed the writ of habeas corpus to lie in spite of § 2725.05's prohibition against issuing the writ if the petitioner is in custody under a judgment of a court of competent jurisdiction. In *Anderson v. McMillan*, 44 Ohio App.2d 50, 53, 335 N.E.2d 719 (1975), the Ohio Court of Appeals heard a habeas petition alleging that the involuntary commitment of a parolee to a mental institution without a hearing did not comport with the fundamental standards of due process under the Fourteenth Amendment. The court stated, "A writ of habeas corpus is an appropriate remedy to a parolee so committed," in spite of respondent's argument that habeas corpus had never before been used in Ohio as a remedy to review a person's custody once that custody was made pursuant to a valid order of commitment. *Id.*

In *In re Fisher*, 39 Ohio St.2d 71, 313 N.E.2d 851 (1974), the Ohio Supreme Court held that a petition for habeas corpus will lie to determine whether a person was not afforded counsel and thereby denied due process in a noncriminal involuntary civil commitment proceeding. The Court found that habeas corpus relief was the only available remedy for the vindication of the petitioner's constitutional right to due process. *Id.* at 75, 313 N.E.2d 851. In response to the appellant's claim that a writ of habeas corpus was improper because the appellees had not challenged the jurisdiction of the sentencing court, the Supreme Court of Ohio stated:

> However, appellees' claims are based upon a denial of due-process rights under the Fourteenth Amendment to the United States Constitution, and the United States Supreme Court has specifically allowed the use of the writ of habeas corpus to enforce such rights. *Fay v. Noia* (1963), 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837].

> In *Young v. Ragen* (1949), 337 U.S. 235 [69 S.Ct. 1073, 93 L.Ed. 1333], the United States Supreme Court discussed the doctrine of exhaustion of state remedies, to which the court had required scrupulous adherence by all federal courts. The court stated that the doctrine presupposed the existence of some adequate state remedy by which prisoners may raise claims of denial of federal rights. *The duty to provide such a procedure, the court stated, was mandatory upon states.*

*Id.* at 74, 313 N.E.2d 851. The Ohio Supreme Court thus recognized in *In re Fisher* that the state must establish an adequate remedy whereby a prisoner may assert and establish a deprivation of constitutional rights. For the reasons stated above, we believe that in the present case, the writ of habeas corpus is the proper state remedy for review of petitioner's constitutional claim.[5]

---

5. Alternatively, petitioner might be able to pursue state relief under the post-conviction remedies provided by Ohio Rev.Code Ann. §§ 2953.21 to 2953.23. His original criminal conviction, which was not appealed, would not be *res judicata* under the doctrine articulated in *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), because the issue presented by the present case could not have been raised at that time.

Even if there is some doubt about whether a state habeas petition will lie, we believe that whether the OAPA lost custody of petitioner by its allegedly unconstitutionally vague notice forms is a question which should first be decided in state court. It is rare that a § 2254 action in federal court is the first challenge to be allowed to a state action, because it would deny the state court the opportunity to examine the constitutionality of its own procedures. *See United States ex rel. Brown v. McGinnis*, 592 F.Supp. 729, 734 (N.D.Ill.1984). Any uncertainty whether the courts of Ohio will consider petitioner's habeas claim on the merits is not substantial enough to render resort to state process futile. *See Arendall v. Dutton*, 683 F.Supp. 182, 185 (M.D.Tenn.1987), *aff'd*, 842 F.2d 330 (6th Cir.1988); *Williams v. Perini*, 557 F.2d at 1224–25. Nor does it obviate the need to give the courts of Ohio a fair opportunity to pass upon and correct any constitutional deficiency. *Id.*

■ We believe that the Ohio writ of habeas corpus pursuant to Ohio Rev.Code Ann. § 2725.04 is available to petitioner to review an action taken by the Ohio Adult Parole Authority where petitioner claims: (1) that his sentence and parole have already been served, (2) that because the judgment of the sentencing court has already been satisfied, it no longer has jurisdiction over him, and (3) therefore, the OAPA no longer has custody over him and did not have the authority to reincarcerate him under his satisfied state sentence.

We therefore AFFIRM the decision of the district court, but for a different reason than that provided by the district court. Petitioner's federal writ of habeas corpus is hereby dismissed for failure to exhaust the state remedy of habeas corpus rather than the state remedy of mandamus.