HORTON, Appellant,

v.

COLLINS et al., Appellees.

[Cite as *Horton v. Collins* (1992), 83 Ohio App.3d 287.]

Court of Appeals of Ohio,
Lorain County.

No. 91CA005276.

Decided Oct. 21, 1992.

288

*William Horton,* pro se.

*Lee Fisher,* Attorney General, and *Donald G. Keyser,* Assistant Attorney General, for appellees.

_____ .

CACIOPPO, Judge.

This appeal arises from the trial court's dismissal of appellant's *pro se* petition for a writ of habeas corpus.

In 1989, a Cuyahoga County Common Pleas Court sentenced petitioner-appellant, William Horton, to serve one and one-half to five years' imprisonment for a drug abuse conviction. Thereafter, the court released Horton on parole. On New Year's Eve, December 31, 1990, Horton assaulted a woman. The Adult Parole Authority ("APA") became aware of this incident, and filed a detainer against Horton with the Cuyahoga County Sheriff's Office on January 14, 1991. On the same day, Horton visited his parole officer, at which time Cleveland police arrested him.

The following day, the APA notified Horton of an on-site hearing at the Cuyahoga County Jail. The hearing, to take place on January 28, 1991, would determine if there was probable cause to believe that Horton had violated the terms of his parole. Horton signed a form waiving his right to this preliminary hearing, and at the same time requested an informal parole revocation hearing.

Horton remained in the Cuyahoga County Jail under a felonious assault charge. He did not post his $10,000 (ten percent) bond. Horton pleaded guilty to this charge on May 20, 1991, at which time the APA scheduled Horton's informal parole revocation hearing for June 17, 1991. Horton then requested a formal hearing, which the APA scheduled for October 11, 1991. At the formal hearing, the APA revoked Horton's parole.

Horton petitioned the Lorain County Court of Appeals for a writ of habeas corpus. He claimed that the court should restore his parole because of the APA's unreasonable delay in granting him a parole revocation hearing. The trial court dismissed the petition in a summary judgment on December 11, 1991. Horton appeals that decision, raising three assignments of error.

### Assignments of Error

"I. Court erred in failing to recognize that availability had been admitted to and established in respondents [*sic* ] return (Parole Violation Report; Included) [*sic* ], and so per prevailing opinion that since petitioner was available to OAPA before any charges were filed in any other arena, and since petitioner was in a custodial setting and not free to leave at his own discretion, and since Unit

supervisor was aware of revoaable [*sic*] conduct by petitioner thourgh [*sic*] knowledge gained by parole officers [*sic*] investigation, and after making a decision to release petitioner per guidelines established by OAPA Administrative Regulations, upon subsequent rearrest by parole officer OAPA had a clear duty to hold immediate hearing to establish the facts and failure to do so and declare petitioner a parole violator even after the imformation [*sic*] gathered in the investigation would have substaniated [*sic*] a violation is a clear cut violation of petitioner [*sic*] rights to due process and also waives OAPA [*sic*] claim to petitioner because the 'timeley [*sic*] hearing requirement' was abridged.

"II.   Court erred in failing to recognize procedural due process violations; in that, 'On January 7, 1991, Horton came into the office and gave the following statement' Parole Violation and Report and Summary [*sic*] so since Horton (petitioner) was available to OAPA on January 7 and 14, 1991 by surrendering himself at the offices of the OAPA, and since central office and unit supervisor was [*sic*] aware of violatable conduct beforehand and prior to any formal charges being filed against Horton, Horton was due an immeadiate [*sic*] hearing and by ignoring his requests for one, the OAPA violated Hortons [*sic*] basic rights afforded by the constitution of the United States and the state of Ohio.

"III.   Ohio Adult Parole Authority and its officials was [*sic*] arbitrary and abused its [*sic*] discretion and power by requiring Horton to surrender twice and (a) after determining a violation had occured [*sic*] by reliable evidence and after determining that Horton was or was not available to the Authority per Administrative Regulations and the laws of the State of Ohio, (b) and since Horton obviously was available on January 7, 1991 when no charges had been filed against him per OAPA AR 5120 1-1-17 E(1), (c) and since unit supervisor per administrative regulation decided to continue Horton on parole January 7, 1991, that any subsequent action taken against Horton concerning these violations that the OAPA had already established availability on January 7, 1991 when the decision was made to continue Horton, thus causing the OAPA to waive any action against Horton by waiting four months to declare him a parole violator when in fact the decision to release him had established availability, declared him a violator and continued him for all practical purposes.  Also the decision to turn Horton over to the Cleveland Police Department at the offices of the OAPA after availability had been established was flagrant and an attempt to cover up the January 7, 1991 visit and release and prejudiced Horton in his attempts to defend himself because of pretrial incarceration which was unneccesary [*sic*] showing a [*sic*] enormous amount of abuse of power and discretion.  This rights violation the court refused to acknowledge in error."

As these assignments of error all suggest that the APA wrongly revoked Horton's parole, we discuss them together.

■ R.C. Chapter 2725 allows one claiming to be unlawfully restrained the opportunity to seek release from confinement by petitioning for a writ of habeas corpus. R.C. 2725.01 defines "habeas corpus" as a "special remedy," and an application for the writ is a civil proceeding. *Henderson v. James* (1895), 52 Ohio St. 242, 244, 39 N.E. 805, 805. An appellate court should review a habeas corpus decision as it would review a decision in any other case. R.C. 2725.26.

■ As the trial court granted the respondent-appellee a summary judgment, we review this decision as we would any other civil summary judgment. A court properly grants summary judgment when it determines that:

"(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Throughout his assignments of error and in his brief, Horton claims that he met with his parole officer on January 7, 1991. He further claims that at this meeting an APA unit supervisor decided to continue him on parole. After investigating Horton's allegations, the APA supervision section determined that Horton failed to report to his parole officer on January 7, 1991 and January 10, 1991. On January 14, 1991, Horton arrived at the parole office, and at that time, Cleveland police arrested him. We find nothing in the record to support Horton's allegation that an APA unit supervisor decided to continue his parole on January 7, 1991. There is no evidence of either an on-site probable cause hearing, or an informal or formal parole revocation hearing on that date. Thus, even if Horton met with his parole officer on January 7, 1991, this fact is not pertinent to his appeal.

■ We turn to the important question of whether the APA unduly delayed Horton's parole revocation hearing. Horton argues that because he did not receive a parole revocation hearing within sixty days after his incarceration on January 19, 1991, the APA lost its right to revoke his parole. We disagree. There is no stringent "sixty day test" in Ohio. Instead, Ohio requires the APA to provide a revocation hearing within a *reasonable time* after the APA has filed a detainer against or held an on-site probable cause hearing with an alleged parole violator. Ohio Adm.Code 5120:1–1–19(A); *Canterbury v. Hill* (July 3, 1991), Lorain App. No. 90CA004931, unreported, at 5, 1991 WL 122897.

In determining what constitutes a reasonable time period, we follow a two-part test set out by the Supreme Court of Ohio. The court has ruled that:

"A court should apply a two-part test in determining whether the delay of the Adult Parole Authority, in not commencing a final parole revocation hearing, entitles an alleged parole violator to habeas corpus relief. First, it must be determined that any delay was unreasonable. Second, if the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator." *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126, syllabus.

The court has subsequently clarified the *Coleman* test by stating, "[a]lthough *Coleman's* two-part analysis seems to suggest that [a defendant] must show both unreasonable delay and resulting prejudice, we note that, under the speedy trial analysis in which *Coleman* is rooted, a defendant may prevail even though he fails to show prejudice." *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 134, 564 N.E.2d 1060, 1063 *(per curiam)*, citing *Moore v. Arizona* (1973), 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183.

Applying the Supreme Court's test, we first must determine whether the delay of Horton's parole revocation hearing was unreasonable. In *Coleman*, the court suggested that in making such a decision a court must balance three factors: " \* \* \* (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time." (Citation omitted.) *Coleman*, 23 Ohio St.3d at 139, 23 OBR at 293, 491 N.E.2d at 1128.

■ To determine the length of the delay, we are guided by the Ohio Administrative Code. The code requires that "[w]ithin a reasonable period of time after a detainer has been filed against the releasee, or the holding of the hearing required by Administrative Regulation 5120:1–1–18, whichever is earlier, the releasee shall be granted a revocation hearing." Ohio Adm.Code 5120:1–1–19(A). The APA thus delayed Horton's parole revocation hearing from January 14, 1991, the date the APA filed a detainer against Horton, until his parole revocation hearing on October 11, 1991.[1]

---

1. Both the APA and the Attorney General emphasize that Horton was "unavailable" to the APA from January 14, 1991 until Horton pleaded guilty to felonious assault on May 20, 1991. During this time period, Horton remained confined in the Cuyahoga County Jail. The Supreme Court of Ohio has held that a parole violator, incarcerated in an Ohio county jail pending disposition of the charges against him, is available for return to the custody of the APA under R.C. 2967.15. *State ex rel. Moon v. Ohio Adult Parole Auth.* (1970), 22 Ohio St.2d 29, 51 O.O.2d 60, 257 N.E.2d 740 *(per curiam )*. As such, an alleged parole violator is entitled to have this period of incarceration credited to his time served. *Id.* at 30, 51 O.O. at 60, 257 N.E.2d at 740.

We next examine the reasons for the APA's nearly nine-month delay. While Horton awaited the disposition of this felonious assault charges, his loss of liberty resulted from his failure to post a $10,000 bond, not from his denial of a parole revocation hearing.[2] The Supreme Court of Ohio has held that this type of delay is neither unreasonable nor prejudicial. *Coleman*, 23 Ohio St.3d at 139, 23 OBR at 293, 491 N.E.2d at 1128.

After Horton pleaded guilty to felonious assault on May 20, 1991, he requested a formal parole revocation hearing after he had previously requested an informal one. Thus, the delay after May 20, 1991 resulted from Horton's own actions and not those of the APA. We find the APA's explanations persuasive, and find the delay of Horton's parole revocation hearing a reasonable one.

Having viewed all of the evidence in a light most favorable to Horton, we find that no genuine issues of material fact remain to be litigated. Appellant's assignments of error are not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and COOK, J., concur.

---

2. We understand that during this time the APA wished to wait for the outcome of the felonious assault proceedings, but the preferred course of conduct should be to hold the hearing as soon as possible. This procedure best protects an alleged parole violator's due process rights.