PALMER, Appellant,

v.

GHEE, Appellee.

[Cite as *Palmer v. Ghee* (1997), 117 Ohio App.3d 189.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–96–53.

Decided Jan. 15, 1997.

Donald Palmer, pro se.

Betty D. Montgomery, Attorney General, and Michael L. Collyer, for appellee.

HADLEY, Presiding Judge.

Petitioner-appellant, Donald Palmer appeals from the judgment entry of the Allen County Common Pleas Court granting the motion of respondent-appellee, Margaret Ghee's, chairperson of the Ohio Adult Parole Authority ("OAPA"), for summary judgment and denying petitioner's application for writ of habeas corpus.

On September 13, 1971, petitioner was convicted of sodomy and assault with a dangerous weapon and sentenced to one to twenty years in prison. On March 15, 1974, petitioner was paroled. Two months later, petitioner was arrested in Michigan and charged with theft and assault to rape. On July 15, 1974, a plea bargain led to petitioner's conviction for attempted larceny. He received a sentence of two and one-half to five years in prison on September 12, 1974.

As a result of petitioner's arrest and conviction in Michigan, Ohio authorities declared petitioner a parole violator and issued a detainer to Michigan authorities. However, on April 19, 1977, the Superintendent of Parole Supervision with the OAPA withdrew the warrant on petitioner in favor of a letter from Michigan authorities notifying Ohio authorities sixty days before petitioner's release. In a letter dated October 4, 1977, Michigan authorities notified the OAPA of petitioner's impending release from the Michigan correctional facility scheduled for November 25, 1977. The OAPA allegedly did not receive the letter until April 7, 1978, almost five months after Michigan authorities released petitioner from their facility.

On April 19, 1978, the OAPA sent a letter to the Michigan Department of Corrections requesting information on the location of petitioner. Michigan authorities, however, had released petitioner without supervision, and did not know petitioner's whereabouts. Almost one year later, on April 12, 1979, the OAPA attempted to contact the petitioner for the first time by sending a letter to his last known address, the address of petitioner's father and the same address to which petitioner had been released in 1974 from his prison sentence in Ohio. Although there is no evidence that petitioner received the letter, the letter stated that petitioner had a parole obligation with Ohio and that it was always the

OAPA's intention to place petitioner back under supervision upon his release from prison in Michigan.

On September 16, 1981, the Findlay Police Department arrested petitioner for petty theft. The OAPA was notified of petitioner's arrest and was present at his hearing, but petitioner failed to appear. Nine years after his failure to appear in court in Findlay, the OAPA declared petitioner a fugitive on April 27, 1990, effective November 25, 1977, the date of his release from prison in Michigan. On May 2, 1990, the OAPA located petitioner in prison in Michigan serving time for a second larceny from building, escape from prison, and breaking and entering. The OAPA issued a detainer to Michigan authorities. Petitioner returned to the Ohio Department of Corrections on November 30, 1994, and after a probable cause finding, petitioner's parole was revoked. Petitioner is currently serving his sentence with the Ohio Department of Corrections.

In his petition in habeas corpus filed January 19, 1996, petitioner alleges that his confinement by the OAPA as a parole violator is in violation of the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Section 16, Article I, Ohio Constitution. Respondent moved to dismiss or, in the alternative, to grant respondent's motion for summary judgment. On July 15, 1996, the Allen County Common Pleas Court granted respondent summary judgment.

This appeal follows, with petitioner asserting two assignments of error. The basis of petitioner's first assignment of error is that a genuine issue of material fact exists, and thus, summary judgment should be denied.[1] The basis of petitioner's second assignment of error is that the trial court's application of Ohio case law to grant respondent summary judgment denied petitioner due process as prescribed by the Fourteenth Amendment of the United States Constitution.[2] We will, for purposes of this opinion, address petitioner's second assignment of error first.

An action in "habeas corpus will lie in certain extraordinary circumstances where there is an unlawful restraint of a person's liberty, notwithstanding

---

1. Petitioner's first assignment of error states:

    "The trial judge committed prejudicial error and abused its discretion by granting defendant summary judgment when there was a material fact: [sic] the moving party was not entitled to judgment: [sic] and reasonable minds could come to one conclusion and [that] conclusion would be against defendant."

2. Petitioner's second assignment of error states:

    "In prejudicial error, the trial court abused its discretion and denied appellant of Due Process guaranteed in the 14th Amendment of [the] United States Constitution when the trial court misconstrude [sic] and misapplied the legal authorities in order to grant appellee summary judgment."

the fact that only nonjurisdictional issues are involved, but only where there is no adequate legal remedy, *e.g.*, appeal or postconviction relief." *State ex rel. Jackson v. McFaul* (1995), 73 Ohio St.3d 185, 186, 652 N.E.2d 746, 748; *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 593, 635 N.E.2d 26, 29. A parolee has a recognized liberty interest that "must be seen as within the protection of the Fourteenth Amendment." *Morrissey v. Brewer* (1972), 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484, 495. Thus, where a parolee has no other adequate legal remedy an action in habeas corpus is the proper action to assert an unlawful restraint of liberty.

The basis of petitioner's argument is that the OAPA denied petitioner due process by not acting within a reasonable time to attempt to bring him into custody after his release from prison in Michigan.

"[W]here a paroled convict violates his parole, there is no affirmative duty upon the state to place detainers on him or pursue him so as to return him to custody, and the state by its inaction creates neither an estoppel nor a waiver of its right to exact the penalty imposed under the conviction when it once again takes him into custody." *Cline v. Haskins* (1964), 175 Ohio St. 480, 481–482, 26 O.O.2d 91, 92, 196 N.E.2d 440, 441.[3] Additionally, "[l]egal custody of a parolee shall remain in the department of rehabilitation and correction until a final release is granted by the authority pursuant to section 2967.16 of the Revised Code." R.C. 2967.01(E); see *Knight v. Stickrath* (1988), 40 Ohio St.3d 38, 39–40, 531 N.E.2d 716, 716–718.

"While the state's failure to place detainers on a declared parole violator or pursue him so as to return him to custody does not constitute a waiver or estoppel of its right to exact the penalty imposed under the conviction when it once again takes him into custody, the state's delay may violate the declared parole violator's right to due process." [Footnotes omitted.] 28 Ohio Jurisprudence 3d (1994) 664, Criminal Law, Section 2683.

"The federal courts indicate that the due process clause imposes an affirmative duty upon the parole authority to proceed with reasonable diligence to issue and execute a warrant for the arrest of the parolee where there has been a violation of the conditions of parole. Failure to do so may result in a waiver of

---

3. In *Cline v. Haskins,* James Cline was released on parole in 1950, but later in the same year was declared a parole violator. Ohio authorities did not locate him until 1960 and placed him in custody. Cline had left the state in 1950 and was subsequently incarcerated in a Florida penitentiary twice and a Tennessee penitentiary once over the next ten years. Ohio authorities never placed a detainer with either Florida or Tennessee authorities for Cline's return. However, Ohio authorities never knew Cline had been imprisoned in the other states. Ohio authorities never knew of Cline's whereabouts after declaring him a parole violator until he was recognized in Cincinnati in 1960 and placed in custody.

the violation and loss of jurisdiction." *Hamilton v. Keiter* (1968), 16 Ohio Misc. 260, 264, 45 O.O.2d 285, 288, 241 N.E.2d 296, 299.[4] See, also, *Hamilton v. Hunter* (D.Kan.1946), 65 F.Supp. 319, 321; *Welch v. Hillis* (W.D.Okla.1944), 53 F.Supp. 456, 459; *United States ex rel. Howard v. Ragen* (N.D.Ill.1945), 59 F.Supp. 374, 378–379; *Greene v. Michigan Dept. of Corrections* (C.A.6, 1963), 315 F.2d 546, 548; *Brewer v. Dahlberg* (C.A.6, 1991), 942 F.2d 328.

■ Even though due process mandates that the OAPA proceed with reasonable diligence in the issuance and execution of a warrant, this duty is limited. "Obviously, a violator who has succeeded in evading the authorities is in no position to complain of a delay. Furthermore[,] delay will not in and of itself suffice to show prejudice, except in an extreme case where actual prejudice has been shown." *Hamilton,* 16 Ohio Misc. at 264–265, 45 O.O.2d at 288, 241 N.E.2d at 299. Thus, an evasive parole violator or a parole violator who is unable to demonstrate that a delay in warrant issuance or execution caused actual prejudice is unable to successfully argue a denial of due process.

After determining what the law mandates in circumstances similar to the present case, we can address petitioner's first assignment of error, alleging that the trial court improperly granted summary judgment to respondent. Upon a finding that summary judgment was improperly granted, we can then address whether respondent denied petitioner his due process rights.

■ Before addressing petitioner's assignment of error we must first examine our standard of review upon a motion for summary judgment. A court of appeals reviews the decision of whether to grant summary judgment in a habeas corpus proceeding as it would in any other civil summary judgment action. *Horton v. Collins* (1992), 83 Ohio App.3d 287, 291, 614 N.E.2d 1077, 1079–1080.

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard*

---

4. While on parole from an Ohio conviction James Hamilton was convicted and imprisoned in a federal penitentiary, violating the terms of his parole. After his release from his federal obligation, Hamilton returned to the county where he resided before his federal imprisonment and continued to live there for sixteen months. He lived with his mother, became employed, married, moved to a new residence, and obtained a listed phone number. After being recognized while shopping by his former parole officer, Hamilton was imprisoned as a parole violator. Four years had elapsed between Hamilton's being declared a parole violator and his subsequent return to custody. The OAPA did absolutely nothing for four years to exert control over Hamilton.

*v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192; see, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

Summary judgment is a procedure designed to cut short the normal litigation process and thus terminate the process when there is no issue for trial. *Murray v. Murray* (1993), 89 Ohio App.3d 141, 144–145, 623 N.E.2d 1236, 1238–1239. Therefore, courts must proceed cautiously and award summary judgment only when appropriate. *Id.* The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141. Thus, the standard of review of a summary judgment is the same for both a trial court and an appellate court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200.

For this court to find that the trial court improperly granted summary judgment to the respondent we must find, in construing the facts in a light most favorable to petitioner, that there exists no genuine issue of material fact remaining for trial.

On October 25, 1977, petitioner wrote the OAPA informing authorities that he was scheduled for release from prison in Michigan on November 25, 1977. Petitioner acknowledged in that letter that he had an outstanding obligation with Ohio as a result of his parole violation. Petitioner stated that he knew the detainer held by the Michigan Corrections Department was later withdrawn by the OAPA, and petitioner wanted to know the status of his obligation in Ohio. He stated that if the OAPA failed to transport him from prison in Michigan to Ohio upon his release, petitioner was assuming that the OAPA had "no interest in pursuing any outstanding warrants or prior bad acts that [he] may have committed in Ohio."

Construing the evidence in a light most favorable to petitioner, we must assume that the letter was sent by petitioner and received by the OAPA. The OAPA never responded to petitioner's letter and failed to transport petitioner to Ohio upon his release from prison in Michigan. However, "there is no affirmative duty upon the state to place detainers on him or pursue him so as to return him to custody." *Cline*, 175 Ohio St. at 481–482, 26 O.O.2d at 92, 196 N.E.2d at 441. Thus, petitioner incorrectly assumed that his obligation in Ohio no longer existed

because respondent failed to transport petitioner to Ohio to fulfill his sentence. Respondent never had this duty.

■ R.C. 2967.16(A) provides the conditions for a successful release from a parole obligation. It states:

"[W]hen a paroled prisoner has faithfully performed the conditions and obligations of the paroled prisoner's parole and has obeyed the rules and regulations adopted by the adult parole authority that apply to the paroled prisoner, the authority * * * may enter upon its minutes a final release and thereupon shall issue to the paroled prisoner a certificate of final release * * *.

Thus, after fulfilling the terms of a parole obligation the OAPA *must* issue a certificate of final release before a parolee's obligation is successfully completed.

■ Petitioner always knew that he had violated the terms of his parole, that he had not received his certificate of final release, and, thus, that he had not completed his parole obligation. Petitioner had an affirmative duty to request from the OAPA his certificate of final release. Without the certificate of final release, "[l]egal custody of a parolee shall remain in the department of rehabilitation and correction * * *." Former R.C. 2967.01(E).

■ Yet petitioner evaded authorities for years. Petitioner evaded authorities in 1981 when he failed to appear at a hearing in Findlay after his arrest for petty theft. Petitioner never voluntarily contacted Ohio authorities to obtain his certificate of final release. Petitioner was located only through the effort of the OAPA in 1990 while he served a sentence in a Michigan prison. As the court in *Hamilton v. Keiter* stated, "a [parole] violator who has succeeded in evading the authorities is in no position to complain [that] a delay" in issuing and executing a warrant denied the parolee due process of the law. *Hamilton*, 16 Ohio Misc. at 264, 45 O.O.2d at 288, 241 N.E.2d at 299. Had the petitioner contacted the respondent requesting his certificate of final release and the respondent subsequently refused to act in any way whatsoever for thirteen years (the time between petitioner's release in Michigan in 1977 and the time the OAPA located petitioner in 1990), petitioner's due process claim could be more meritorious.

Construing the facts in a light most favorable to petitioner, we find that petitioner's evasiveness after his release from prison in Michigan in 1977 prevented the OAPA from exacting the penalty imposed on petitioner under his conviction in 1971. Thus, the OAPA did not deny petitioner his due process rights and summary judgment was properly awarded to respondent. We,

**198**

therefore, affirm the judgment of the Allen County Common Pleas Court denying petitioner's application for writ of habeas corpus.

*Judgment affirmed.*

SHAW and THOMAS F. BRYANT, JJ., concur.